In re David H. MAGNUSON and Janet L. Magnuson, Debtors.

Wayne DREWES, as bankruptcy trustee for David H. Magnuson and Janet L. Magnuson, Plaintiff,

v.

David H. MAGNUSON and Janet L. Magnuson, Defendants.

Bankruptcy No. 88–05407.
Adv. No. 88–7140.

United States Bankruptcy Court,
D. North Dakota.

May 15, 1989.

Wayne Drewes, Fargo, N.D., trustee.

Kip M. Kaler, Fargo, N.D., for trustee.

Brad A. Sinclair, Fargo, N.D., for debtors.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is an adversary proceeding filed by the trustee on December 21, 1988. By his complaint the trustee seeks to have the Debtors' discharge revoked and to have undisclosed assets turned over to the bankruptcy estate. The matter came on for trial on May 2, 1989. From the exhibits and testimony introduced at the trial, and from the petition and schedules filed in the Debtors' Chapter 7 case, the court finds the facts in this matter to be as follows:

*Findings of Fact*

David Magnuson operated Magnuson Sales, Inc., a steel bin sales company, and Janet Magnuson is the office manager for a Devil's Lake oil company. During the spring of 1988 both Magnuson Sales, Inc. and the Debtors, personally, were having severe cash flow problems and the Debtors were being sued in a state court collection action. On May 2, 1988, they consulted a Fargo law firm about filing for bankruptcy. On that date they decided to file Chapter 7 petitions both for themselves and for their business. They completed and executed a Chapter 7 petition. Additionally, they gave the law firm information to prepare the schedules which Bankruptcy Rule 1007(c) requires to be filed within 15 days after the petition is filed. Janet Magnuson was in charge of the Debtors' financial affairs and testified that when she provided their attorney with the information for the schedules she estimated what their cash and account balances would be as of the anticipated petition filing date. At one point in her testimony she said she assumed May 23rd was the date because it was that date that the "final papers", referring to the schedules, would be ready. Her professed assumption that May 23rd was the final date is belied by later trial testimony where she stated that when the schedule information was provided on May 2nd it was done using May 13th as the estimated filing date. At one point she said she wasn't sure which date she used for reference. The court believes from the totality of the testimony that Janet Magnuson was under no misunderstanding as to when the petition was filed and made her estimates based upon her knowledge of the Debtors' personal financial situation and expenditures that would have to be made before May 13, 1988. The law firm filed the Chapter 7 petition for the Debtors on May 13, 1988. On May 20, 1988, the law firm mailed the prepared schedules to the Debtors for their review and signatures. Accompanying the schedules was a letter stating that it was "imperative" that the Debtors return the signed schedules to the law firm by May 25, 1988, so that they could be filed with the bankruptcy court.

The Debtors read and signed the prepared schedules. At the top of the first page of the asset schedule it states, "schedules B–1, B–2, B–3 and B–4 must include all property of the debtor *as of the date of the filing of the petition* by or against him." (emphasis added) On schedule B–3 line (a) asks for the market value of a debtor's "cash on hand." The Debtors responded that they had $50.00 in cash. Schedule B–3 line (b), asks for the market value of a debtor's deposits of money with banking institutions, savings and loan associations ... credit unions ... and others." The Debtors stated that the market value of their deposits was $168.00. Included in the schedules is the following declaration signed by the Debtors:

> I or we, David H. Magnuson & Janet L. Magnuson declare under penalty of perjury that we have read the foregoing schedules consisting of 17 sheets and that they are true and correct to the best of my knowledge, information and belief.

The schedules were filed with the court on May 25, 1988. When the Debtors signed the schedules on May 23, 1988, they knew the petition had been filed on May 13, 1988, and from the schedule instructions were clearly advised that the property listed must be as of the petition filing date.

As of May 2, 1988, when the Debtors provided the data for their schedules they actually had $56.33 in their checking account, and the balances of their three savings accounts at Lake Region Credit Union were $37.24, $4,247.61, and $2.76, for a total savings accounts balance $4,287.61. This total assumes that the Debtors provided the information for their schedules before they made some substantial withdrawals from their savings account on the same day. On May 2, 1988, the Debtors made three withdrawals from one of their savings accounts in the amounts of $2,000.00, $2,000.00 and $247.61. These withdrawals exactly wiped out the savings account balance. The $247.61 withdrawal was transferred to another savings account. One of the $2,000.00 withdrawals was transferred to the Debtors checking account. The Debtors withdrew the remaining $2,000.00

in cash. They spent the cash on the following dates and in the following amounts:

| Date | Amount |
|---|---|
| 5–03–88 | $ 600.00 |
| 5–06–88 | 103.27 |
| 5–06–88 | 118.99 |
| 5–06–88 | 165.63 |
| 5–10–88 | 200.00 |
| 5–10–88 | 200.00 |
| 5–11–88 | 60.00 |
| 5–11–88 | 105.00 |
| 5–12–88 | 11.09 |
| | $1,563.98 |

The Debtors placed the remaining $436.00 in cash in an envelope in a drawer in their home with the intention of using it to pay David's college summer school tuition. They actually paid the tuition on June 13, 1988. Thus on May 13, 1988, the Debtors had actual cash on hand, after the above transactions, of $436.00.

The activity in the Debtors' checking account between May 2, 1988, and May 13, 1988, as reflected in their check book register, may be summarized as follows:

| | | |
|---|---|---|
| 5–02–88 | Beginning balance | $ 56.33 |
| 5–02–88 | Transfer from savings account | +2,000.00 |
| | Ten checks | −2,367.04 |
| 5–13–88 | Balance | −310.71 |

The negative balance reflected by the check register is not, however, an accurate reflection of the balance in the checking account. Two of the checks written by the Debtors were written with the express intention of not delivering them to the payees until a later date. One check in the amount of $84.00 was not to be delivered until May 20, 1988. A second check in the amount of $671.63 was not to be delivered until June 1, 1988. When these two predated checks are backed out of the account balance the Debtors' checking account balance on May 13, 1988, was $444.92.

Between May 13, 1988, and May 25, 1988, the only activity in the Debtors' checking account was a $330.50 deposit on May 20, 1988, and the $84.00 check written on May 9, 1988, was delivered to the payee on May 20, 1988. Thus as of May 25, 1988, without reflecting the $671.63 pre-dated check to be delivered on June 1, 1988, the balance in the checking account was $691.42. The Debtors cash on hand did not

change significantly between May 13, 1988, and May 25, 1988.

On August 17, 1988, the attorney for the trustee sent a letter to the Debtors' attorney stating that he believed that the Debtors had bank accounts totaling $287.61 as of the date the petition was filed. The letter also noted that only $168.00 had been disclosed and exempted. The letter asked that the Debtors explain the $4,000.00 withdrawn from their accounts on May 2, 1988. The Debtors responded by filing an amended exemption schedule B–4 on September 29, 1988, by which they exempted deposits in the amount of $287.61 and $50.00 in cash. The Debtors made no serious effort to ascertain the correct balance of their accounts as of the date of their petition. They believed it would be too time consuming and simply adopted the figure used in the trustee's attorney's letter. Additionally Janet Magnuson sent a letter to the trustee's attorney attempting to explain the use of the $4,000.00. The letter actually only accounts for $3,546.04. The Debtors received a discharge on September 14, 1988.

On December 6, 1988, the Debtors filed another amendment to their exemption schedule B–4. This time they claimed as exempt $475.00 in cash on hand and deposits of $1,000.00.

### Conclusions of Law

#### 1.

■ The trustee seeks to have the Debtors' discharge revoked pursuant to section 727(d)(1). That section provides:

(d) On request of the trustee ... the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor and the requesting party did not know of such fraud until after the granting of such discharge.

Section 727, which provides for the drastic remedy of nondischarge is to be construed liberally in favor of the debtor and strictly against the trustee with the trustee having the burden of proving each element by clear and convincing evidence. *See Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583, 588 (5th Cir.1987); *In re Montgomery*, 86 B.R. 948, 955 (Bankr.N.D.Ind.1988). It is a fundamental necessity in bankruptcy that the statements and schedules filed pursuant to section 521 be accurate and reliable. *In re Burke*, 83 B.R. 716, 720 (Bankr.D.N.D. 1988). Interested creditors and the trustee must have access to information upon which they can rely without having to conduct an expensive investigation. *In re Hussan*, 56 B.R. 288, 290 (Bankr.E.D.Mich. 1985); *In re MacDonald*, 50 B.R. 255, 259 (Bankr.D.Mass.1985). A false statement made in the schedules is sufficient grounds for denying a discharge if it was material and knowingly made with a fraudulent intent. *In re Braidis*, 27 B.R. 470, 471 (Bankr.E.D.Pa.1983). A statement is material if it concerns the existence and disposition of property. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984).

■ In the instant case the relationship between the Debtors' statements on their schedules and the actual amounts of their cash and deposits may be summarized as follows:

| | 5–25–88 schedules | 9–29–88 amended schedules | 12–6–88 amended schedules | 5–13–88 actual | 5–25–88 actual |
|---|---|---|---|---|---|
| Cash | $ 50.00 | $ 50.00 | $ 475.00 | $ 436.00 | $ 436.00 |
| Deposits | 168.00 | 287.61 | 1000.00 | 732.53 | 715.42 |
| Total | $218.00 | $337.61 | $1475.00 | $1168.53 | $1152.42 |

The relevant date for purposes of asset valuation is the date on which the petition was filed, in this case May 13, 1988.

■ On their schedules the Debtors stated that they would have $218.00 in cash and deposits as of May 13, 1988. They actually had $1,168.53. A mere inaccuracy

is not grounds for nondischargeability. In this case, however, the inaccuracy in light of the circumstances is at least an indication of a fraudulent intent. Both of the Debtors are experienced in financial matters. David operated his own business and Janet is the office manager for an oil company. Moreover, the Debtors offered no evidence suggesting that they received any unexpected income between May 2 and May 13. Yet, in spite of these advantages, the Debtors underestimated their cash and deposits by more than 81%. During the trial Janet Magnuson occasionally asserted that she had provided the information for the schedules by estimating values as of May 23, 1988, believing that to be the filing date.

Although the court believes the Debtors were under no misunderstanding as to the petition filing date, even if they were it is not an excuse. Before affixing their signatures to schedules Debtors are under an affirmative duty to read the schedules and satisfy themselves that they are "true and correct to the best of their knowledge, information and belief". If a debtor is unsure of the date of petition filing he cannot blindly go ahead and sign the schedules but must make such inquiry as is sufficient to become apprised of the correct filing date. In any event there were no significant changes in the Debtors' cash or deposits between May 23, 1988, and May 25, 1988, when the schedules were eventually filed. Even if the Debtors scheduled cash and deposits are compared to the actual values as of May 25, 1988, $1,152.42, the Debtors have still underestimated their cash and deposits by more than 80%.

The Debtors profess to have simply forgotten about the approximately $400.00 in cash in their dresser drawer at the time they provided the information for their schedules. It is very unlikely that the Debtors, who were in severe financial straits, were so cavalier in regard to money that they forgot about $400.00. Even when a debtor files schedules in haste, failure to promptly amend the schedules with correct amounts is considered a reck-

less indifference to the truth which is the equivalent of fraud. *In re Alfonso*, 94 B.R. 777, 778, 18 B.C.D. 1189, 1190 (Bankr. S.D.Fla.1988); *In re Nazarian*, 18 B.R. 143, 147 (Bankr.D.Md.1982). Even if the Debtors did forget the $400.00 on May 2, 1988, they must have been reminded of its existence on June 13, 1988, when they used it to pay for David's tuition. Yet they did not amend their schedules to reflect the cash at that time. The Debtors further testified that since they knew that David would be incurring a tuition bill they set aside the $400.00 to pay the tuition and considered it already spent. Debtors have an uncompromising duty to disclose whatever ownership interests they hold in property. *In re Gugliada*, 20 B.R. 524, 528 (Bankr.S.D.N.Y.1982). Even if Debtors think assets are worthless or unavailable they must nonetheless make full disclosure. *In re Watkins*, 84 B.R. 246, 250 (Bankr.S.D.Fla.1988). In spite of the very clear warning at the beginning of the schedules stating that "all" property must be listed, the Debtors did not include the full amount of their cash or deposits.

With regard to both the cash and the pre-dated checks the Debtors reduced the amount of assets shown on their schedules for debts for which they had not yet delivered payment and which were not yet due and owing. They did not, however, reflect any future income which they had earned, but not yet received, on the schedules. This inconsistent approach understated both the cash and deposits on the schedules.

After the inaccuracy in their initial schedule was discovered by the trustee, the Debtors simply adopted the figure stated by the trustee's attorney in his letter. Janet Magnuson estimated that it would have taken her two hours to obtain records from the credit union and ascertain her correct account balance. She decided that it was not worth investing that much time and simply adopted the figure used by the trustee. Once again this is an indication of the Debtors' reckless indifference to the accuracy of their schedules. It also indicates a willingness to report only so much

of their unreported assets as the trustee had discovered. The Debtors did not disclose the cash in the drawer in their September 29, 1988, amended schedule. It was not until they had been further investigated by the trustee that the Debtors disclosed the $400.00 in cash in their December 6, 1988, amended schedules.

The schedules contained a clear admonition that "all" property was to be listed. The language of the questions contained in the schedules is clear and unambiguous. Additionally the Debtors signed a declaration stating that the schedules were true and correct to the best of their knowledge when they had in fact knowingly omitted assets. Given the circumstances the court concludes that the Debtors knowingly made the false statements contained within the schedules with a fraudulent intent.

### 2.

■ The Debtors argue that even if they made fraudulent false statements, the statements were not material because they have amended their schedules to exempt the undisclosed amounts. An exemption claim will be disallowed when a debtor fraudulently concealed the asset to be exempted. *In re Hanson*, 41 B.R. 775, 778 (Bankr.D.N.D.1984); *Redmond v. Tuttle*, 698 F.2d 414, 417 (10th Cir.1983). To hold otherwise would be to reward debtors who conceal assets from the estate. In the instant case in which the Debtors fraudulently concealed assets from the trustee they will not now be allowed to amend their schedules to exempt the concealed assets. Accordingly they will be limited to the exemptions claimed on their exemption schedule filed May 25, 1988.

### 3.

■ The third issue arising in this case is whether the trustee is estopped from seeking a revocation of the Debtors' discharge. In order for a discharge to be revoked under section 727(d)(1) the trustee must prove that he did not learn of the Debtors' fraud until after the discharge was granted. *See In re Benak*, 91 B.R. 1008, 1009 (Bankr.S.D.Fla.1988); *In re Hall*, 84 B.R. 472, 474 (Bankr.N.D.Ohio 1987). In the instant case the Debtors were granted a discharge on September 14, 1988. The letter from the trustee's attorney to the Debtors' attorney indicates that on August 17, 1988, the trustee knew that the Debtors' schedules incorrectly understated the amount of their deposits by $119.61. The trustee also knew that shortly before filing the Debtors had withdrawn $4,000.00 from a savings account. These two facts standing alone do not provide an indication of a fraudulent intent. It was not until the trustee received a copy of the Debtors' checkbook register and a letter from Janet Magnuson describing her cash expenditures that the trustee had any evidence bearing on the Debtors' fraudulent intent. The trustee did not receive these materials until after the discharge had been granted.

### 4.

■ Finally, the trustee seeks turnover of property of the estate. Section 542(a) provides that persons in possession of estate property must deliver it to the trustee. Section 541(a) provides that the estate is comprised of all of a debtor's legal and equitable interests in property as of the commencement of a case under section 302. Section 302 provides that a joint case is commenced by the filing of a petition with the bankruptcy court. In the instant case when the Debtors filed their petition on May 13, 1988, they had an ownership interest in $436.00 in cash and $732.53 in deposits. As determined above the Debtors are restricted to the exemptions set forth on their May 25, 1988, schedule of exemptions which included $50.00 in cash and $168.00 in deposits. Thus the Debtors have $950.53 in estate property which they have not exempted or turned over to the estate.

Accordingly, for the reasons stated, IT IS ORDERED that the discharge granted to David and Janet Magnuson on September 14, 1988, is hereby REVOKED. IT IS FURTHER ORDERED that David and Janet Magnuson turn over to the trustee the sum of $950.53.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.