**In re Bruce BARR and Paula Barr, Debtors.**

**Keith REZIN and Sue Rezin, Plaintiffs,**

v.

**Bruce BARR and Paula Barr, Defendants.**

Bankruptcy No. 93 B 05857.
Adv. No. 95 A 00815.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 9, 1997.

Donald V. O'Brien and Carol Coplan Babbitt of O'Brien O'Rourke & Hogan, Chicago, IL, for Plaintiffs.

Leroy G. Inskeep, David G. Lynch and Elizabeth A. Graber of Rudnick & Wolfe, Chicago, IL, for Defendants.

### MEMORANDUM OPINION ON DEBTORS' MOTION TO DISMISS COUNT II OF THE THIRD AMENDED COMPLAINT TO REVOKE DISCHARGE

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the joint bankruptcy case filed by debtors Bruce Barr and Paula Barr (collectively "Debtors," "Defendants," or "the Barrs") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 et. seq. The order of discharge was entered on December 18, 1994. Plaintiffs filed this Adversary Complaint seeking to revoke Debtors' discharge under 11 U.S.C. § 727(d)(1). During the course of trial on the original Complaint, Plaintiffs requested and were granted leave to amend their complaint to include a second count requesting revocation of discharge under 11 U.S.C. § 727(d)(2) (Count II). Judgment has since been entered for Debtors on the original § 727(d)(1) count (Count I). Debtors have moved to dismiss Count II under Fed. R. Bankr.P. 7012. For reasons stated below, the motion to dismiss is denied.

#### Jurisdiction

This matter properly lies here pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. Subject matter jurisdiction arises under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

#### Background [1]

On March 17, 1993, Debtors filed their voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. They listed Plaintiffs on their bankruptcy schedules as unsecured creditors holding claims for an unspecified amount. Plaintiffs filed an Adversary Complaint objecting to Debtors' proposed discharge under 11 U.S.C. § 727 and asserting that their claim was nondischargeable under § 523. That Complaint was subsequently dismissed without prejudice. Debtors received their discharge on or about December 18, 1994. Plaintiffs then brought a petition under Fed.R.Civ.P. 60(b) to reinstate their adversary proceeding. The adversary proceeding was reinstated, but only to the extent it sought nondischargeability on § 523 grounds. *Rezin v. Barr*, 183 B.R. 531 (Bankr.N.D.Ill.1995). Following trial thereon, judgment was subsequently entered for Debtors. *Rezin v. Barr*, 194 B.R. 1009 (Bankr.N.D.Ill.1996).

Plaintiffs filed the instant Adversary proceeding under § 727(d)(1) which, as stated, was amended to include allegations under § 727(d)(2). Judgment was entered on Count I on March 27, 1997. *See Rezin v. Barr*, 207 B.R. 160 (Bankr.N.D.Ill.1997). Defendants have moved to dismiss Count II on grounds that the requisite element of fraud is not pleaded with particularity and the amended complaint fails to state a claim for which relief can be granted.

#### Facts as Pleaded in Count II

Plaintiffs allege that, during the year prior to filing the bankruptcy petition, Debtors concealed and transferred property of Debtors' estate with intent to hinder, delay and defraud creditors. Plaintiffs further assert that Debtors knowingly and fraudulently made false oath and account concerning their bankruptcy petition and withheld from the Chapter 7 Trustee ("Trustee") properties as well as information and other records relating to Debtors' property and financial affairs. They also allege that Debtors failed to explain satisfactorily transfers of cash in large amounts to persons or concerns for which there is no evidence of indebtedness.

---

1. There have been four prior published opinions in connection with the Barr Chapter 7 bankruptcy, two in this Adversary and two in a related adversary. *See Rezin v. Barr (In re Barr)*, 188 B.R. 565 (Bankr.N.D.Ill.1995) (hereinafter "Op."); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009 (Bankr.N.D.Ill.1996); *Rezin v. Barr (In re Barr)*, 183 B.R. 531 (Bankr.N.D.Ill.1995); *Rezin v. Barr (In re Barr)*, 207 B.R. 160 (Bankr.N.D.Ill.1997). As extensive findings have already been made, it is unnecessary to repeat all background information here. Only information necessary to pass on this motion will be repeated here.

Plaintiffs specifically allege that such transfers and concealment were in connection with four assets which would have otherwise been administered as property of the estate: (1) The Greater Aurora Joliet Transportation Co. ("Greater Aurora Joliet"); (2) 1990 Cherry Hill Road; (3) Bennett Road property and home; and (4) several life insurance policies. Count II contends that the transactions alleged to have involved those properties were part of a calculated scheme to conceal assets and put them beyond reach of the Trustee and creditors. Further details are pleaded as to each of those assets.

### Greater Joliet Transportation

Plaintiffs allege that debtor Bruce Barr transferred a business which he owned and operated to his parents for no consideration. It is asserted that, prior to November 4, 1991, Bruce Barr owned and operated a profitable cab and livery business incorporated in 1990 as Greater Joliet Transportation ("Greater Joliet"). Its principal business was to transport Medicaid patients from their homes to their medical providers at the expense of the State of Illinois. The company also furnished livery service to various corporations and other private individuals. In February or March 1992, subsequent to litigation initiated by Plaintiffs against Defendants before the state court in Grundy County, Illinois, Greater Joliet was allowed to lose its standing as a corporation in Illinois for failure to pay franchise fees and failure to file certain necessary reports. A new corporation called Greater Aurora Joliet ("Greater Aurora") was incorporated to carry on the identical enterprise. All corporate stock in Greater Aurora was issued to the parents of Debtor Bruce Barr, Mr. H. Dale Barr and Mrs. Anne Barr, who at that time resided in Tennessee. Plaintiffs allege that the lapse of the Greater Joliet corporate charter was part of the Barrs' scheme to defraud creditors. It is further asserted that Bruce Barr's parents paid no consideration for stock in the new company issued to them, had no involvement in the day-to-day affairs of the old or new company, and received no compensation from either business. Bruce Barr managed Greater Aurora's affairs after that corporation was formed. He is alleged to be the de facto operator of Greater Aurora and, with Paula Barr, to have enjoyed all the profits and benefits derived from that business. From April 1992 through December 18, 1994, it is asserted that Bruce Barr withdrew more than $90,000.00 from Greater Aurora, about $20,000.00 of which was withdrawn pre-bankruptcy while the rest was withdrawn after the Chapter 7 bankruptcy was filed. These funds were assertedly property of Debtors that should have been accounted for or turned over to the Chapter 7 Trustee. Plaintiffs allege that the transfer and concealment of the new corporate business, its assets and its proceeds, were fraudulent as to Plaintiffs, other creditors, and the Trustee.

### Cherry Hill Road Property

Plaintiffs also allege that as early as October 26, 1987, Bruce Barr owned 100% of the beneficial interest in land trust No. 4849 wherein the property in trust is a warehouse recycling facility at 1900 Cherry Hill Road in Joliet, Illinois. That property is leased to a company, Edmonds Enterprises, Inc., with annual rent of $15,600.00 now paid to Greater Aurora. On March 6, 1992, the entire beneficial interest in land trust No. 4849 was allegedly assigned to the Greater Aurora (the new corporation discussed above). That transfer was without consideration being paid to anyone, and Bruce Barr's parents (who owned all of the stock in Greater Aurora) received no tangible benefit. Bruce Barr assertedly retained full dominion, benefit, and control as to the Cherry Hill Road property. Plaintiffs allege the transfer of beneficial interest in the land trust was done to conceal the asset from creditors of the Debtors. Debtors allegedly had a duty to disclose their beneficial interest in the Cherry Hill Road property and to turn over that asset and profits therefrom to the Trustee.

### Bennett Road Property

Plaintiffs further allege that on March 26, 1992, Debtors contracted to purchase a five acre parcel of real estate situated on Bennett Road in Verona, Illinois, for a consideration of $39,950.00 cash. The transaction closed on April 18, 1992, and the property was conveyed into Land Trust No. 1231, with the

Grundy County National Bank of Morris as Trustee. Power of direction over that trust was vested in Dana Gilbertson, brother of debtor Paula Barr. Gilbertson furnished no part of the consideration for the purchase of the property and at no time has had any real ownership interest therein. Plaintiffs allege that Debtors provided the entire consideration for purchase of this property, and that the property was purchased with net proceeds of funds Plaintiffs paid to Debtors for a home Debtors were constructing for Plaintiffs.

On June 1, 1992, Gilbertson, allegedly acting for Debtors, directed the land trustee to convey the Bennett Road property to Bruce Barr's parents for no consideration. At that time, construction was about to start on a large residence for Debtors on the property. Cost of that construction was allegedly defrayed by funds withdrawn from Greater Aurora, loans against insurance policies and the proceeds of a mortgage applied for by Bruce Barr's parents. Debtors are assertedly making the mortgage payments. Plaintiffs allege that Debtors are actually the true beneficial owners of the improved property. As such, it is contended that Debtors had a duty to turn this property over to the Trustee after the bankruptcy petition was filed. Plaintiffs contend that the foregoing transfers and transactions were fraudulent as to creditors and the bankruptcy Trustee.

### Life Insurance Policies

Finally, Plaintiffs allege that, although Debtors listed six Prudential Life Insurance policies on Schedule B of their Chapter 7 petition, showing a combined cash value of $1,575.00, Debtors actually owned ten insurance policies having a total cash value of more than $25,000.00. Moreover, Debtors are said to have borrowed nearly $33,000.00 against these policies in the fall of 1992, less than six months prior to their bankruptcy filing. These values and transactions were assertedly concealed from the Trustee and the creditors throughout pendency of the bankruptcy proceeding.

Additional facts pleaded are referred to in the discussion below.

### STANDARDS FOR MOTION TO DISMISS

Defendants' Motion is brought under Fed. R. Bankr.P. 7012. For Defendants to prevail on their Motion to Dismiss, it must clearly appear from the pleadings that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *McKown v. Dun & Bradstreet, Inc.*, 744 F.Supp. 1046, 1047 (D.Kan.1990) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) ). Both pleaded facts and reasonable inferences drawn from pleaded facts must be considered in a light most favorable to Plaintiff, when this Motion is considered. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

Under federal "notice" pleading requirements, pleadings merely need to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (as made applicable to this Adversary proceeding by Fed. R. Bankr.P. 7008); *See Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir.1989). Pleadings should therefore be liberally construed. *See Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 653 (7th Cir.1984). So long as fair notice has been given and the court can glean an actionable claim from the complaint, the court must entertain the plaintiff's case. *American Nurses' Assoc. v. State of Illinois*, 783 F.2d 716, 723 (7th Cir.1986).

When a party alleges fraudulent activity in its pleadings, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b) (as made applicable by Fed. R. Bankr.P. 7009). Rule 9(b) should nevertheless still be read in conjunction with Rule 8(a). *See People v. Volpert (In re Volpert)*, 175 B.R. 247, 258 (Bankr.N.D.Ill.1994) (Schmetterer, J.) and cases cited. Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have adequately been set forth. *See Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). Moreover, a plaintiff is not required to plead facts as to which they

lack access prior to discovery. *Katz v. Household Inter., Inc.,* 91 F.3d 1036, 1040 (7th Cir.1996).

When alleging fraud in a complaint, it is only necessary to set forth a basic outline of fraud. *Vicom Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)). "Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that plaintiff claims was fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 523 (7th Cir.1993) (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)); *see also DiLeo,* 901 F.2d at 627 (Rule 9(b) "particularity" means "the who, what, when, where and how: the first paragraph of any newspaper story"); *and see In re Janikowski,* 60 B.R. 784, 790 (Bankr.N.D.Ill.1986) (and cases cited). However, mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and may warrant dismissal. *Veal v. First American Sav. Bank,* 914 F.2d 909, 913 (7th Cir.1990).

### DISCUSSION

Section 727(d)(2) provides:

On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee....

11 U.S.C. § 727(d)(2).

The burden of proof under this section lies with the Plaintiffs, *Yonikus,* 974 F.2d at 904 (citing *In re Puente,* 49 B.R. 966, 968 (Bankr. W.D.N.Y.1985)), and the standard for proof is preponderance of the evidence. *In re Reese,* 203 B.R. 425, 430 (Bankr.N.D.Ill. 1997); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Fraud Pleaded with Particularity

The first issue raised is whether Plaintiffs have pleaded fraud for purposes of § 727(d)(2) with enough specificity so that their Amended Complaint states a cause of action. Defendants argue that the Amended Complaint fails to plead fraud with particularity, but they do not articulate wherein the Complaint is deficient in that regard. Nonetheless, the Amended Complaint does plead fraud with enough specificity to state a cause of action under 11 U.S.C. § 727(d)(2). *See Bankers Trust,* 959 F.2d at 683.

The four transactions complained of are described in Count II in sufficient detail to explain the "who, what, when, where and how" of the asserted fraud. Plaintiffs state the parties and property involved in the transactions; the month and year and in some instances the exact dates of the transactions; the address, city, or county of the transactions; and how the parties generally accomplished the transactions. Further, Plaintiffs allege that Debtors failed to inform the bankruptcy Trustee or creditors of their interest in the properties at issue. "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Matter of Yonikus,* 974 F.2d 901, 904 (7th Cir.1992) (citing *In re Magnuson,* 113 B.R. 555, 559 (Bankr.D.N.D.1989) (citing *In re Gugliada,* 20 B.R. 524, 528 (Bankr.S.D.N.Y.1982) and *In re Watkins,* 84 B.R. 246, 250 (Bankr. S.D.Fla.1988))). Plaintiffs argue that Debtors' omissions concerning their property and concealment thereof was fraudulent as to creditors and the Trustee, and they have pleaded fraud with sufficient particularity to survive this motion to dismiss.

### Section 727(d)(2) Can Apply to Property Owned Pre–Bankruptcy

The second issue is whether Plaintiffs have stated a cause of action for revocation of discharge under § 727(d)(2) when relying on property interests owned by Debtors pre-

bankruptcy but allegedly hidden from the Chapter 7 Trustee. As stated in the statute, a discharge may be revoked under § 727(d)(2) if the debtor (1) acquired or was entitled to acquire property of the estate and (2) knowingly and fraudulently "failed to report the acquisition or entitlement to such property, or to deliver or surrender such property to the trustee...."

■ Some courts impose an additional judge-made burden that the moving party lack pre-discharge knowledge of the debtor's conduct. *See, e.g., In re Bennett*, 126 B.R. 869, 873 (Bankr.N.D.Tex.1991). However, no such requirement exists in the wording of § 727(d)(2). Although § 727(d)(1) specifically limits its use to parties that "did not know of ... fraud until after the granting of such discharge," the language of § 727(d)(2) contains no such limitation. *Reese*, 203 B.R. at 430–431. While there is some authority that permits a plaintiff to be estopped by delay until after discharge from asserting a known wrong under § 727(d)(2), *In re Lyons*, 23 B.R. 123, 126 (Bankr.E.D.Va.1982), that is an affirmative defense to be pleaded and proven.

Debtors further argue that § 727(d)(2) does not apply to revoke their discharge because it applies only to property acquired after a bankruptcy petition is filed. Although language of the provision does not specify that it is restricted to post-petition acquisitions of property or property rights, a number of courts and commentators have interpreted it in that manner. *In re Weisberg*, 202 B.R. 332 (Bankr.D.N.H.1996); *In re Argiannis*, 183 B.R. 307 (Bankr.M.D.Fla. 1995); *In re Brink*, 179 B.R. 726 (Bankr. M.D.Fla.1995); *In re Poole*, 177 B.R. 235 (Bankr.E.D.Pa.1995); *In re Savage*, 167 B.R. 22 (Bankr.S.D.N.Y.1994); *Puente*, 49 B.R. at 968; 6 *Collier on Bankruptcy* ¶ 727.15[4] (15th ed. revised 1996); 1 *Ginsberg & Martin on Bankruptcy* 11.04[B] (4th ed. 1996). Those views are not directly based on any language in § 727(d)(2) specifying that its application is limited to property rights acquired post-bankruptcy.

To the contrary, a Seventh Circuit panel affirmed revocation of discharge under § 727(d)(2) based upon a debtor's failure to report a pre-bankruptcy personal injury cause of action on his schedules. *See Yoni-*

*kus*, 974 F.2d at 902 (although personal injury suit was filed post-petition, some steps to commence suit took place pre-petition and the cause of action arose prior to bankruptcy). Other courts have also applied § 727(d)(2) where a debtor failed to report pre-petition property of the estate on the debtor's bankruptcy petition and schedules. *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir.1996) (Circuit court noting at criminal hearing that it could not interfere with sound discretion of bankruptcy court which revoked discharge under 727(d)(2) because debtor failed to disclose property and assets, made false statements in his bankruptcy schedules, transferred property with the intent to defraud, hinder, or delay creditors, and transferred property as collateral for a loan); *Reese*, 203 B.R. at 432 (Debtor failed to list pre-bankruptcy entitlement to tax refund on schedules and failed to disclose the information or provides trustee with copies of tax return); *In re Walters*, 176 B.R. 835, 876 (Bankr.N.D.Ind.1994) (discharge revoked where assets intentionally and fraudulently omitted from schedules).

■ As stated, Debtors have an absolute duty to report any existing property interests when they file in bankruptcy, and that duty is certainly not restricted to post-petition receipt of assets or rights in assets. Indeed, to limit the reading of § 727(d)(2) as defendants argue would be to find that Congress intended post-petition receipt of property that is hidden from the bankruptcy trustee to justify use of § 727(d)(2), but not wholesale deception of the trustee by shielding assets received before bankruptcy was filed. Despite the cited authority to the contrary, § 727(d)(2) by its terms is not so limited and does not distinguish between property acquired pre-petition or post-petition. Absent a congressional rewrite of § 727(d)(2), a debtor who hides known pre-bankruptcy assets from the Chapter 7 Trustee and creditors may find the discharge revoked under that provision for fraud occasioned by such concealment.

*Plaintiffs Alleged That the Debtor Acquired Property of the Estate or Rights to Such Property*

■ As stated, Debtors have an absolute duty to report whatever interests they hold

in property. *Yonikus,* 974 at 904. Section 541(a) defines property of the estate as *inter alia* all legal or equitable interests of the debtor in property as of the commencement of the case, 11 U.S.C. § 541(a)(1), and proceeds, product, offspring, rents, or profits of or from property of the estate (but not debtor's post-petition income). 11 U.S.C. § 541(a)(6). The definition of property of the estate is a broad one. "It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified...." *Yonikus,* 974 F.2d at 904–905 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess., 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess., 82 (1978). reprinted in 1978 U.S.C.C.A.N. 5787, 5868).

 Debtors argue that the respective items of property alleged here were not and cannot be property of the bankruptcy estate. With regard to Greater Aurora, Debtors argue that Plaintiffs do not allege that any transfer occurred. Rather, one business closed, and another business opened in which they deny an interest. While it is true that property of the estate in Chapter 7 does not include post-petition income, it does include post-petition proceeds, product, offspring, rents, or profits of or from pre-bankruptcy property of the estate. It is not alleged that Bruce Barr was an employee of Greater Aurora who received a salary, but that he withdrew substantial sums from that business for which no accounting has been made. Plaintiffs allege that Bruce Barr was the true operator of Greater Aurora, and the pleadings can be read as an assertion that he was the true owner of its stock. If he was, his interest in Greater Aurora stock would then be property of the estate and profits therefrom would also be property of the estate.

As to 1990 Cherry Hill Road, Plaintiffs allege that Debtors transferred their entire interest in land trust No. 4849 to Greater Aurora, but that Bruce Barr still retained full dominion, benefit, and control over that property. Debtors argue that, while the allegations may be sufficient to set aside a fraudulent transfer, an action under § 548 is available solely to the trustee. 11 U.S.C. 548(a). Thus, they contend this cannot be a cause of action that was rightly property of the estate. However, Plaintiffs are not seeking to set aside a fraudulent transfer. They are alleging that Bruce Barr was in fact the true owner of beneficial interest in the property, and his failure to report such interest is actionable under § 727(d)(2).

Debtors make the same arguments with regard to Plaintiffs' allegations relating to the Bennett Road house and property. However, Plaintiffs pleaded, despite the transfer complained of, that Debtors remained the actual owners. Plaintiffs also allege that the cash used to purchase the property was that of Debtors, that Debtors took out related loans against their insurance policies, that Debtors are making the mortgage payments, and that Debtors are residing in the house on the property. Those allegations are sufficient to suggest property rights fraudulently hidden from the Trustee, and thus survive the motion to dismiss.

 Finally Debtors argue that the asserted understatement of their insurance policies does not constitute a knowing and fraudulent failure to report an asset to the trustee. However, substantial undervaluation of a material asset on a debtor's schedule is sufficient to show bankruptcy fraud. *United States v. Walker,* 29 F.3d 908, 913–14 (4th Cir.1994). Moreover, material undervaluation of an asset is one of the recognized "badges of fraud" which serve as circumstantial evidence in discharge revocation hearings. *Berkery v. Commissioner, Internal Revenue Service,* 192 B.R. 835, 841 (E.D.Pa. 1996) (citations omitted). Here, Debtors allegedly undervalued the total cash value of all insurance assets by more than 90 percent. Moreover, Plaintiffs alleged concealment of four unscheduled policies with enough specificity so as to survive this motion to dismiss. They assert that the missing four policies were Prudential life insurance policies and were the same policies that Debtors used as security for loans obtained to construct their home on the Bennett Road property. This is quite sufficient. A plaintiff is not required to plead evidence as to which access is lacking prior to discovery. *Katz,* 91 F.3d at 1040.

Once discovery has begun, Plaintiffs will learn the specific numbers and amount of these policies. Until that time, Plaintiffs have pleaded fraud in the concealment of the insurance policies with sufficient specificity to survive this motion to dismiss.

### Plaintiffs Alleged That Debtors' Failure to Report Was Knowing as Well as Fraudulent

It is not enough to allege under § 727(d)(2) that Debtors failed to report property of the estate; Plaintiffs must also have alleged that Debtors "knowingly intended to defraud ... or engaged in such reckless behavior as to justify the finding of fraud." *Yonikus*, 974 F.2d at 905 (citing *Puente*, 49 B.R. at 969). Such fraud may be proven by evidence that Debtors were aware the omitted assets existed and that they knew failure to list the assets would mislead creditors or the Trustee. Such fraud will be implied where it is shown that Debtors acted recklessly in not reporting assets. *Id.* (citing 4 *Collier on Bankruptcy* ¶ 727.15[4] (1992) ). Fraudulent intent may also be "based on inferences drawn from a course of conduct" or "inferred from all of the surrounding circumstances." *Id.* (citing *In re Devers*, 759 F.2d 751, 753–754 (9th Cir.1985); *Farmers Co-op. Ass'n of Talmage, Kansas. v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Kindorf*, 105 B.R. 685, 689, 690 (Bankr. M.D.Fla.1989); *Matter of Reed*, 700 F.2d 986, 991 (5th Cir.1983) ) (The debtor's "whole pattern of conduct" supports the bankruptcy court's finding of fraudulent intent).

The Seventh Circuit in *Yonikus* noted that the debtor engaged in "a pattern of fraudulent deception." 974 F.2d at 906. Plaintiffs have likewise alleged that Debtors engaged in a pattern of fraudulent deception and an elaborate scheme to hide their assets prepetition so as to avoid a judgment debt and a post-petition failure to report their interests in these assets to the Chapter 7 Trustee. Plaintiffs further allege that the same attorney who aided in the formation of Greater Aurora assisted in transferring Debtors' beneficial interest in land trust No. 4849 to Greater Aurora. They also allege that several family members of both Bruce and Paula Barr were involved in their scheme to hide assets. In addition, there is the specific matter of four unreported life insurance policies.

Knowingly and fraudulently hiding assets when it occurs is an abuse of the bankruptcy process. A debtor who fraudulently manipulates the bankruptcy system to avoid paying just debts is not eligible for the same fresh start as the honest debtor.

The Bankruptcy Code provides the method by which debtors may "reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." This "fresh start" policy, however, requires that the debtor honestly comply with the requirements of the Code. If the debtor fails to comply with the requirements of the Code, the discharge may either be denied or revoked. Revocation of discharge, therefore, occurs because of a failure to comply with the requirements of the Code which would have otherwise entitled the debtor to discharge.

*Cluck*, 87 F.3d 138, 140 (5th Cir.1996) (internal quotations and citation omitted); *see also Yonikus*, 974 F.2d at 906.

### CONCLUSION

Proof of these matters is obviously left for trial. However, Plaintiffs have pleaded their cause of action sufficiently to survive the motion to dismiss.

For reasons stated herein and by separate order, the motion to dismiss Count II of the third amended Adversary Complaint will be denied, and Defendants will be ordered to file an answer to the third amended Adversary complaint.