In re Stephen Paul WALLACE, dba Wallace Real Estate Company dba River Oaks Associates dba Wallace Investments, Debtor.

John R. Woolman, Woolman Properties, Inc., and Wakefield Development Company, L.L.C.,an Oklahoma Limited Liability Company, Plaintiffs,

v.

Stephen Paul Wallace, Defendant.

Bankruptcy No. 02–00073–M.
Adversary No. 02–0222–M.

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 19, 2003.

William Grimm, Barrow, Gaddis, Griffith & Grimm, Tulsa, OK, for Plaintiffs.

Stephen P. Wallace, pro se.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Application and Notice for Entry of Default Judgment (the "Application") filed by John R. Woolman, Woolman Properties, Inc. and Wakefield Development Company, L.L.C., Plaintiffs herein. A hearing on the Application was held on February 11, 2003. Plaintiffs appeared by and through their attorney, William R. Grimm. Defendant Stephen Paul Wallace ("Wallace") appeared *pro se*. At the hearing, the Court received argument and provided each party with the opportunity to submit evidence. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. § 1334(b) (West 2003).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a) (West 2003). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(I) and (J) (West 2003).

## Burden of Proof

 Plaintiffs ask the Court to deny Wallace's discharge pursuant to various provisions of § 727(a). The burden of proof falls upon the plaintiff.[2] In order to prevail, Plaintiffs must prove each element by a preponderance of the evidence.[3] This Court agrees with those courts which have held that "[c]onsistent with the 'fresh start' policy underlying the Code, [objections] to discharge should be construed strictly against the creditor and liberally in favor of the debtor."[4]

## Background

This Court has previously detailed the grueling and contentious history of this bankruptcy case.[5] The story need not be repeated here. A review of *Wallace I* demonstrates the ability of Mr. Wallace to fire salvo after salvo of pleading at target after target, regardless of their merit. In this adversary proceeding, Mr. Wallace has engaged in a new tactic—silence.

## Findings of Fact

Plaintiffs filed their complaint (the "Complaint") on October 29, 2002.[6] The Complaint included the following allegations (paragraph numbers are as found in the Complaint):

14. On September 13, 2001, Defendant filed in the Western District of Oklahoma Bankruptcy Court ("WDO–Bankr.Ct."), his Petition seeking voluntary relief under Chapter 11 of the Bankruptcy Case, *In re Stephen P. Wallace*, Case No. 01–019481–TS (the "Bankruptcy Case"). Thereafter, the Assistant U.S. Trustee for the WDO–Bankr.Ct., and others, filed motions to transfer the Bankruptcy Case to the Northern District of Oklahoma Bankruptcy Court ("NDO–Bankr.Ct.") due to the improper venue of the Bankruptcy Case.

16. On September 28, 2001, Wallace filed his original verified Schedules and Statement of Financial Affairs pursuant to Bankruptcy Rule 1007 with the Clerk of the Bankruptcy Court. The original verified Schedules and Statement of Financial Affairs were duly executed by Wallace, under penalty of perjury, as being true and correct. . . .

17. On October 24, 2001, during a hearing before the Honorable John TeSelle on various pending motions in the WDO–Bankr.Ct., Wallace testified (Transcript 73:11–21) regarding his Schedules, as follows:

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2003).

2. *See* Fed. R. Bankr. P. 4005 (West 2003).

3. *See First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *cf. Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

4. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

5. *See In re Wallace*, 288 B.R. 139 (Bankr. N.D.Okla.2002) (hereafter *"Wallace I"*).

6. *See Docket No. 1.*

Q. (By Mr. Weger) Did you prepare these schedules, Mr. Wallace?

A. With my attorney, yes.

Q. Okay. Did you review them before they were filed?

A. Yes, I did.

Q. And do you agree that they're true, accurate and correct?

A. To the best of my knowledge.

Q. Did you sign so under oath?

A. I did so.

24. On May 29, 2002, Wallace testified regarding the accuracy of his previously-filed verified Schedules before this Court during a hearing on the U.S. Trustee's Motion to Convert (Transcript 56:25–56:11) as follows:

Q. You—you signed them that the information contained in there was true and correct, right?

A. I didn't see the information that he put on the schedules before I signed it.

Q. But you signed these trusts—or you signed these documents that were filed as schedules under penalty of perjury, didn't you; you understand that?

A. No, I didn't understand that. I signed them two days before they were filed. And Mr. Freeman and his associate completely discombobulated items saying I had 7000 a month in income. The whole thing is void. The schedules are—do not pertain to anything real.

Q. Have you at any time attempted to file real, as you define them, schedules with this Court?

A. No one has told me to. And I didn't know that the schedules were so misrepresenting of the facts. And the entire Chapter 11 scheduling is void as far as I'm concerned, because Mr. Freeman prepared them; I did not.

Thereafter, during a regularly scheduled 341 meeting held on August 1, 2002, Wallace again repudiated the accuracy of his previously-filed verified Schedules.

30. Wallace has knowingly and fraudulently, in connection with his duties and obligations as a Debtor in this case under the Bankruptcy Code, filed substantially inaccurate verified Monthly Reports, Schedules and Statements of Financial Affairs. Upon his discovery that such filings were materially incorrect, inaccurate and wrong, Wallace failed, refused and neglected to correct such verified filings to accurately reflect the true and correct nature of his assets and liabilities.

31. Additionally, Wallace has knowingly and fraudulently provided sworn testimony in open Court regarding such verified Schedules and Statements of Financial Affairs for the purpose of misleading the various creditors, Trustee and this Court as to the accuracy of the same. Accordingly, Wallace should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

Wallace was personally served with a copy of the Complaint, together with a summons, on October 30, 2002.[7]

On December 2, 2002, Wallace filed a pleading entitled "Motion to Dismiss with Prejudice." Said pleading read in its entirety as follows:

**COMES NOW**, Defendant, and moves this Court to dismiss Adversary Case

---

7. *See Docket No. 3.*

No. 02–0222–M with prejudice as plaintiffs have failed to state a claim and plaintiffs have **committed perjury** upon the Court. (See Exhibits A & B) This case is void upon its face.[8]

Notwithstanding the reference to "Exhibits A & B," no exhibits were attached to this pleading. On December 4, 2002, on its own motion, the Court denied Wallace's motion to dismiss, noting that said motion "does not contain any legal or factual basis for dismissal."[9] A copy of said order was served upon Wallace on the same date.[10] Under the Federal Rules of Civil Procedure, Wallace was allowed an additional ten (10) days to answer or otherwise responsively plead to the Complaint.[11] Wallace has failed to do so, and the time for filing such a pleading has long since passed.

On December 5, 2002, Plaintiffs served their Requests for Admissions of Fact and Genuineness of Writings (the "Requests") upon Wallace. The Requests included the following items for Wallace to admit or deny:

1. Wallace signed and caused to be filed with the Clerk of the Bankruptcy Court, his bankruptcy Schedules, Statements of Financial Affairs, and Monthly Operating Reports ("Debtor's Reports").

2. The Debtor's Reports are materially misleading, inaccurate, incorrect and wrong.

3. Wallace intentionally failed and refused to amend, modify, alter or change his Debtor's Reports upon his discovery that the same were materially misleading, inaccurate, incorrect and wrong.

4. Wallace has knowingly and fraudulently provided sworn testimony in open Court regarding the accuracy of his verified Debtor's Reports.[12]

Wallace failed to respond to any of the Requests.

In support of the allegations contained in the Complaint, and in addition to the admissions by Wallace, Plaintiffs presented evidence regarding the false statements made under oath by Wallace. A hearing was held in this case before Judge TeSelle on October 24, 2001. Three separate matters were at issue in that hearing: (1) whether venue of Wallace's bankruptcy case should be transferred from the Western District of Oklahoma to the Northern District of Oklahoma; (2) whether Bank One, a creditor, should be granted relief from the automatic stay provisions of § 362; and (3) whether a super-priority loan to Wallace from a Ms. Edith Jackson should be approved. At that hearing, Wallace testified that he assisted in the preparation of his bankruptcy schedules and statement of affairs, that he reviewed them prior to placing his signature upon them and that the same were true and correct to the best of his knowledge and belief.[13] In testimony before this Court on May 29, 2002, on the issue of whether his case should be converted from Chapter 11 to Chapter 7, Wallace testified that the schedules were not true and correct, that he had no involvement in their preparation and that he did not review them prior to signing them.[14] Wallace made similar

---

**8.** *See Docket No. 4* (emphasis in original).

**9.** *See Docket No. 5.*

**10.** *See id.*

**11.** *See* FED. R. CIV. P. 12(a)(4)(A) (West 2003); *see also* FED. R. BANKR. P. 7012 (West 2003).

**12.** *See Ex. 36.*

**13.** *See Ex. 33*, p. 73, l. 11–21.

**14.** *See Ex. 32*, p. 49, l. 6 through p. 50, l. 2, p. 56, l. 13 through p. 58, l. 1.

statements under oath at his meeting of creditors.[15]

At the hearing, the Court also received the testimony of Mr. Patrick J. Malloy III ("Malloy"), the trustee appointed to serve in the Wallace case. Malloy testified that Wallace failed to disclose certain assets on his schedules; namely, the sum of $10,000.00 held in escrow by an abstract company, an interest in various oil and gas leases and an interest in an insurance trust. Malloy also testified to his belief that Wallace had failed to cooperate with Malloy in the administration of Wallace's bankruptcy case. Malloy testified that in the course of the estate administration, he found these non-disclosures to be material.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

Plaintiffs seek an order of this Court denying the entry of a discharge in favor of Wallace, or, in the alternative, a ruling that the debts owed by Wallace to the Plaintiffs are non-dischargeable. If the Court determines that Wallace is not entitled to a discharge, all issues relating to the dischargeability of a particular debt are rendered moot. In addition, the Court need not review and consider each and every ground for denial of discharge advanced by the Plaintiffs. If a single ground for denial of discharge is established, the inquiry ends.

Section 727(a)(4)(A) of the Code provides that a discharge may be denied where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" [16] The United States Court of Appeals for the First Circuit has held that

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.[17]

The Fourth Circuit has held that

> [i]n order to be denied a discharge under this section [§ 727(a)(4)(A)], the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud. The false oath made by the debtor must have related to a material matter. Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact.[18]

---

**15.** See Ex. 34, p. 3, l. 18 through 25.

**16.** § 727(a)(4)(A).

**17.** Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir.1987) (citations omitted).

**18.** Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir.1987) (citations omit-

ted); see also Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1294 (10th Cir.1997) ("In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.").

A statement contained in a debtor's schedules or statement of affairs, or the omission of assets from the same may constitute a false oath for purposes of § 727(a)(4).[19] Because the debtor is usually the only person able to testify directly concerning intent, "fraudulent intent may be deduced from the facts and circumstances of a case."[20] At least one court has noted that "[w]here assets of some substantial value are omitted from the schedules, the conclusion that they were omitted purposefully with the fraudulent intent to conceal the assets in question may be warranted."[21]

As a result of Wallace's failure to answer the Complaint, all well pled factual allegations contained therein are taken as true.[22] In the present case, Plaintiffs have pled in great detail the false oaths advanced by Wallace. On not less than four separate occasions, Wallace has made a statement under oath regarding the accuracy of his schedules and statement of affairs. When he initially signed them, he did so under penalty of perjury. Shortly thereafter, he testified under oath before Judge TeSelle that his schedules were prepared with his assistance and input and that they were true and correct to the best of his knowledge and belief. Later, before this judge, Wallace testified that his schedules were inaccurate and prepared without his input. He made the same manner of statement under oath at his first meeting of creditors with Malloy as trustee. Either the schedules and statement of affairs were accurate and prepared with Wallace's input or they were not. Wallace has testified to both propositions. Not only did the Plaintiffs plead these facts with specificity, they pro-

19. See Job v. Calder (In re Calder), 907 F.2d 953, 955 (10th Cir.1990); see also Perry v. Warner (In re Warner), 247 B.R. 24, 26 (1st Cir. BAP 2000) ("A debtor's failure to disclose an interest in real property [in his bankruptcy schedules] would be a material false oath.").

20. Calder, 907 F.2d at 955–956. Although not directly on point, the Court has found helpful certain cases dealing with revocation of discharge for failure to disclose assets under § 727(d)(2). The United States Court of Appeals for the Seventh Circuit has held that

[t]o find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud. The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied. The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances.

In re Yonikus, 974 F.2d 901, 905 (7th Cir. 1992) (citations omitted); see also Kaler v. Olmstead (In re Olmstead), 220 B.R. 986, 994 (Bankr.D.N.D.1998) (quoting Yonikus); see also Rezin v. Barr (In re Barr), 207 B.R. 168, 176 (Bankr.N.D.Ill.1997) (fraud "may be proven by evidence that Debtors were aware the omitted assets existed and that they knew failure to list the assets would mislead creditors or the Trustee").

21. Crews v. Topping (In re Topping), 84 B.R. 840, 842 (Bankr.M.D.Fla.1988) (citation omitted).

22. See, e.g., Ryan v. Homecomings Financial Network, 253 F.3d 778, 780 (4th Cir.2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."); Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir.1992); Securities Investor Protection Corp. v. R.D. Kushnir & Co. (In re R.D. Kushnir & Co.), 267 B.R. 819, 823 (Bankr.N.D.Ill. 2001) ("For purposes of a motion for entry of default judgment, the Court may accept as true all well pleaded allegations in the Complaint, and all reasonable inferences drawn from such facts, as true."(citation omitted)).

vided ample evidentiary support for these allegations at the hearing on the Application. The conclusion that Wallace has made a false statement under oath is inescapable.

The Court also has no difficulty in finding that Wallace possessed the requisite fraudulent intent at the time of his statements. Under Federal Rule of Civil Procedure 36(a)

> [e]ach matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or the party's attorney.[23]

Plaintiffs specifically asked Wallace to admit that he made false statements under oath; his failure to respond to the Requests results in his admission that he did so. To rule otherwise would be to reward Wallace for his default and to punish Plaintiffs and their counsel for following the rules. In addition, the record before the Court establishes that Wallace made the statements before Judge TeSelle as part of an effort to convince Judge TeSelle that he should prevail on issues of venue and relief from the automatic stay, and that he should be granted authority to enter into a super-priority loan. The Court concludes that Wallace made these false statements in an attempt to advance his own interests, and that such a conclu-

sion is sufficient to support a finding of fraudulent intent.

Finally, the Court finds that the false oaths dealt with matters of a material nature. This case deals with a matter that is central to the effective administration of the bankruptcy process; namely, the submission of accurate schedules and statements of affairs. The fact that the Bankruptcy Code requires these documents to be executed under penalty of perjury is neither coincidence nor accident. Administration of a bankruptcy case is greatly impaired unless these documents are prepared carefully, thoughtfully and accurately. Administration of a bankruptcy case is also greatly impaired if a debtor is allowed to give false testimony under oath. In the present case, Wallace has done both. He testified before Judge TeSelle that he assisted in the preparation of the schedules and attested to their accuracy in the process. Before this judge, he testified that the schedules were a sham, and that he had no involvement in their preparation. The Court cannot allow debtors to look upon their duties in such a cavalier manner. One who gives less than truthful testimony to a tribunal does so at his or her peril. This Court considers any intentional misrepresentation to a court to be material.

The Court is well aware that Wallace appears *pro se,* and that denial of his discharge is a very serious matter. The record in this adversary proceeding reveals that Wallace has been afforded all possible procedural protection. After his motion to dismiss was denied, he was provided the statutory time frame to further plead. He failed to do so.[24] He was prop-

---

**23.** FED. R. CIV. P. 36(a) (West 2003).

**24.** Any argument which Wallace may make to the effect that he was denied access to this Court by the filing restrictions imposed upon him in *Wallace I* is totally without merit.

Said restrictions do not deny Wallace access to the Courts; they are specifically tailored to require Wallace to submit his pleadings in good faith and for a proper purpose. *See Wallace I,* 288 B.R. at 148–49.

erly served with the Requests and failed to respond to them. On that basis alone, the Court would have been well justified in considering the entry of a default judgment. Instead, the Court set the matter for hearing, giving Wallace one more chance to rebut the allegations contained in the Complaint. Plaintiffs appeared at the hearing and offered evidence to support each of their factual allegations. While Wallace chose to appear at that hearing, he presented no evidence to contradict the allegations of the Plaintiffs, nor did he show any cause for his failure to respond to the demands of this litigation in the manner contemplated under the Federal Rules of Civil Procedure. Entry of judgment by default is justified.

### Conclusion

The Court concludes that Plaintiffs are entitled to judgment by default on their claim that Wallace has made a false oath for purposes of § 727(a)(4)(A), and that his discharge should be denied. Having reached that result, the Court need not and does not consider any other issues under § 727 or § 523. A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.