**In the Matter of Daniel J. YONIKUS and Carolyn S. Yonikus, Debtors.**

**Appeal of Daniel J. YONIKUS.**

No. 91–3506.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1992.

Decided Sept. 9, 1992.

Thomas J. Ortbal (argued), Hutmacher, Rapp & Ortbal, Quincy, Ill., trustee.

Steven N. Mottaz (argued), Thomas, Mottaz, Eastman & Sherwood, Alton, Ill., for debtors, appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and LEE, District Judge.[*]

WILLIAM C. LEE, District Judge.

This is an appeal of the district court's order affirming the bankruptcy court's revocation of the debtors' discharge. The bankruptcy trustee filed a complaint seeking revocation of the debtors' discharge, and a judgment against the debtors based upon the debtors' failure to report proceeds Daniel J. Yonikus received from a personal injury settlement. The bankruptcy court,

Judge Larry Lessen, agreeing with the trustee, found that the personal injury settlement was "property of the estate" which the debtor fraudulently failed to report on the bankruptcy application schedules. On appeal to the district court, the bankruptcy court was affirmed[1] by Judge Richard Mills, of the Central District of Illinois. For the reasons listed below, we affirm.

## I. BACKGROUND

On May 19, 1984, while on duty as an Illinois State Police officer, Daniel J. Yonikus was involved in an auto accident in which he sustained head injuries. This accident formed the basis for worker's compensation and personal injury claims. Daniel Yonikus asserted the personal injury claim by having personal injury/worker's compensation attorney Marshall Smith issue a "lien letter" to personal injury defendant Charles Hoskins on April 9, 1985. On May 8, 1985, about one month after this informal commencement of the personal injury claim, Daniel Yonikus and his wife, Carolyn S. Yonikus (collectively, "the debtors", or simply, "Yonikus") filed a voluntary petition for bankruptcy, seeking relief under Chapter 7 of the United States Bankruptcy Code. While Marshall Smith's firm pursued the personal injury and worker's compensation claims, Yonikus hired another law firm to handle the bankruptcy matter.[2] Yonikus did not disclose the personal injury claim to bankruptcy attorney Mottaz.

On the bankruptcy form "Schedule B-2", "Personal Property", at item "q", "Contingent and unliquidated claims of every nature, including counterclaims of the Debtor [give estimate of value of each]", Yonikus listed "-0-". In addition to not reporting the potential personal injury claim at item "q", Yonikus further failed to report the potential claim anywhere at all on the

---

[*] The Hon. William C. Lee, of the Northern District of Indiana, is sitting by designation.

1. Judge Mills also remanded the case to the bankruptcy court for clarification not relevant to this appeal, see n. 4, infra.

2. Yonikus' bankruptcy attorney, Steven N. Mottaz, is the counsel prosecuting this appeal for Yonikus.

schedules accompanying the petition, as required in 11 U.S.C. § 541(a).[3]

Yonikus filed his personal injury complaint in the United States District Court for the Central District of Illinois on September 11, 1985. Yonikus received a discharge from the bankruptcy court a few months later on January 7, 1986. Yonikus obtained a judgment against Hoskins on the personal injury claim on September 17, 1987. Yonikus subsequently settled the personal injury claim for policy limits of $100,000. On November 23, 1987, Yonikus received a worker's compensation award from the State of Illinois in the amount of $38,140.19. On December 10, 1987, Yonikus received $40,391.17, his share in the proceeds from his settlement of the personal injury claim. The balance of the settlement amount was disbursed to cover court costs, attorney's fees, and a "lien"[4] asserted by the State of Illinois in order to offset the amount of worker's compensation awarded to date. Yonikus promptly spent the personal injury settlement by purchasing a new truck, retiring an auto loan, and paying the remaining amount owed on the mortgage of one of his residential properties. Yonikus next appealed the worker's compensation award, which was then increased to a total of $79,339.90, plus interest on November 22, 1988. Instead of paying the additional worker's compensation benefits, the State of Illinois agreed to offset that additional amount by the amount Yonikus would have otherwise been required to return from the proceeds of the personal injury settlement.

3. On bankruptcy form "Schedule B–3", "Property not otherwise scheduled", Yonikus listed "none". And on form "Schedule B–4", "Property claimed as exempt", Yonikus did not claim any worker's compensation or personal injury awards. Elsewhere in the bankruptcy petition, Yonikus reported receiving worker's compensation for a medical disability related to heart and spine conditions, but he failed to mention his disability claim related to the automobile accident personal injury.

4. An employer's interest in a judgment rendered in favor of an employee for injuries suffered in the course of employment, and for which the employee had received worker's compensation

On March 9, 1988, upon a complaint filed by the trustee, the bankruptcy court found Yonikus' attempt to give his three daughters (the youngest age 14) three separate residential properties under a "transfer-the-property-and-forgive-the-debt" scheme was "made with an intent to defraud creditors." Thus, after appropriate credits, the bankruptcy court found that a large portion of the forgiveness was voidable under the bankruptcy law.[5]

On April 25, 1989, the trustee filed a complaint which gave rise to this appeal. In his complaint the trustee sought revocation of Yonikus' discharge, and sought a judgment for the proceeds of the personal injury claim, based on Yonikus' failure to report the personal injury claim on the petition for bankruptcy. The bankruptcy court revoked the discharge on January 3, 1991. On appeal to the District Court, the decision of the bankruptcy court was affirmed on September 30, 1991. Yonikus now appeals this revocation of discharge.[6]

## II. ANALYSIS

■ We review the bankruptcy court's findings of fact upon the clearly erroneous standard, giving great deference to the bankruptcy court. *Matter of Love,* 957 F.2d 1350, 1354 (7th Cir.1992); *Matter of Smith,* 848 F.2d 813, 816 n. 2 (7th Cir.1988). Thus, we may reverse factual findings only if, upon the entire record, we reach "the definite and firm conviction that a mistake has been committed." *Matter of Love,* 957 F.2d at 1354 (quoting *E.E.O.C. v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir.1988)). We review the bankruptcy

is in the form of a lien. *Jackson v. Polar–Mohr,* 115 Ill.App.3d 571, 71 Ill.Dec. 384, 387, 450 N.E.2d 1263, 1266 (1983).

5. Yonikus is not appealing this finding.

6. In its January 3, 1991 opinion the bankruptcy court granted the revocation of discharge, but did not specifically address the trustee's complaint for damages. On appeal, the district court affirmed the revocation of discharge and remanded to the bankruptcy court for clarification of the ruling on the complaint for damages. The only issue presently before us is the revocation of discharge.

court's conclusions of law *de novo. Matter of Love,* 957 F.2d at 1354; *Matter of Newman,* 903 F.2d 1150, 1152 (7th Cir.1990).

The bankruptcy court revoked Yonikus' discharge because it found the personal injury claim was "property of the estate" which Yonikus "knowingly and fraudulently failed to report", as described in 11 U.S.C. § 727(d)(2). At § 727(d)(2) the Bankruptcy Code provides that upon the request of the trustee, the court will revoke a discharge previously granted, if:

> The debtor acquired property that is property of the estate or became entitled to acquire property that would be property of the estate and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or deliver or surrender such property to the trustee....

11 U.S.C. § 727(d)(2).

■ The trustee has the burden of proof under this section. *In re Puente,* 49 B.R. 966, 968 (Bankr.W.D.N.Y.1985). We first address the question of whether the personal injury claim was property of the estate which Yonikus should have reported. Successively we turn to the issue of whether Yonikus had the requisite fraudulent intent in failing to report the claim.

### A. Property of the Estate [7]

■ Yonikus argues that under Illinois law, the State of Illinois was entitled to proceeds from the personal injury claim in an amount equal to the compensation the state paid Yonikus for the worker's compensation claim. *See Swendsen v. Brighton Building & Maintenance Co.,* 35 Ill. App.3d 987, 343 N.E.2d 42 (1976) (an employer who pays worker's compensation to an employee for injuries caused by a third party is entitled to indemnification from the third party tort-feasor). Therefore, Yonikus argues, the personal injury award was property of the State of Illinois, not property belonging to Yonikus. Yonikus also asserts that worker's compensation

awards are exempt from the bankruptcy estate pursuant to Ill.Rev.Stat. C48 ¶ 138.-21. Yonikus argues that he received nothing by virtue of the personal injury claim beyond what he was entitled to under the worker's compensation act, and therefore, should not be punished for failure to report the claim in his bankruptcy petition.

■ Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate. *In re Magnuson,* 113 B.R. 555, 559 (Bankr.D.N.D.1989) (citing *In re Gugliada,* 20 B.R. 524, 528 (Bankr. S.D.N.Y.1982) and *In re Watkins,* 84 B.R. 246, 250 (Bankr.S.D.Fla.1988)). At § 541(a), "Property of the estate", we find the Bankruptcy Code's definition of the property of a bankruptcy estate. In pertinent part, this statute provides:

> (a) [A bankruptcy] estate is comprised of all the following property, wherever located:
>
> (1) Except as provided in subsections (b) and (c)(2) [8] of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> \*   \*   \*   \*   \*   \*
>
> (6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541(a)(1) and (6).

The legislative history of § 541(a) in both the House and Senate provides, "The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified...." H.R.Rep. No. 595, 95th Cong., 1st Sess., 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S.Rep. No. 989,

---

**7.** This issue concerns conclusions of law, which we review *de novo. Matter of Love,* 957 F.2d at 1354; *Matter of Newman,* 903 F.2d at 1152.

**8.** These exceptions are not relevant to this appeal, as subsection (b) concerns powers exercised for the benefit of others, and subsection (c)(2) concerns certain trust provisions.

95th Cong., 2nd Sess., 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.

As evidenced by the plain language of the statute and by the Senate and House Committee Reports, the broad scope of § 541(a) clearly indicates that at the time Yonikus filed the bankruptcy petition, his potential personal injury claim was property of the bankruptcy estate. Yonikus confuses the requirement of reporting property of the estate with the qualified right of a debtor to claim exemptions in property of the estate.

At 11 U.S.C. § 522, the Bankruptcy Code permits debtors to claim certain property as exempt from the bankruptcy estate. However, Bankruptcy Rule 4003 and § 522(1) of the Bankruptcy Code dictates that debtors who claim exemptions must list such exempt property on the required schedule of assets. All property the debtor owns at the time the bankruptcy petition is filed becomes property of the bankruptcy estate. 3 *Collier on Bankruptcy* ¶ 522.26 (1992). Rather than withholding property from the estate, the debtor actually seeks a return of the property from the estate by filing the claim for exemption. *Id.* The bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate.[9] Yonikus erred in not reporting his personal injury claim on the bankruptcy schedules.

However, it is not sufficient that the trustee merely demonstrate that Yonikus failed to report property of the bankruptcy estate. In order to revoke the discharge, Bankruptcy Code § 727(d)(2) requires the trustee to also show that Yonikus "knowingly and fraudulently failed to report the acquisition of or entitlement to such property." 11 U.S.C. § 727(d)(2).

**B. Fraudulent Failure to Report**[10]

■ Yonikus asserts the bankruptcy court erred by finding his failure to report the property was made "knowingly and fraudulently". Yonikus testified that he did not report the personal injury claim "because as far as I was concerned, it [the personal injury claim] was an individual, separate matter." Yonikus claimed that his personal injury/worker's compensation attorney, Marshall Smith, told him the personal injury recovery was exempt from bankruptcy. Attorney Smith testified that he did not give Yonikus any such advice, and in fact, that Smith did not learn of Yonikus' bankruptcy until 1989, after the personal injury and worker's compensation matters were resolved. The bankruptcy court found Smith a more credible witness than Yonikus.

To find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud. *In re Puente*, 49 B.R. at 969. The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied. 4 *Collier on Bankruptcy* ¶ 727.-15[4] (1992). The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. *In re Devers*, 759 F.2d 751, 753–754 (9th Cir.1985); *Farmers Co-op. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Kindorf*, 105 B.R. 685, 690 (Bankr.M.D.Fla.1989). Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances. *Matter of Reed*, 700 F.2d 986, 991 (5th Cir.1983) (The debtor's "whole pattern of

**9.** The bankruptcy process provides that the debtor must first list such property and claim such exemptions. Next, the trustee has an opportunity to review the claim for exemptions. Then, upon the trustee's objections, the bankruptcy court determines the legitimacy of the claim or, if the trustee has no objections, the exemption is then granted. Fed.R.Bankr.P.

3004; 8 *Collier on Bankruptcy* ¶¶ 4003.03–4003.05 (1992).

**10.** We review this findings of fact upon the clearly erroneous standard, and may reverse only if certain that the finding was mistaken. *Matter of Love*, 957 F.2d at 1354; *Matter of Smith*, 848 F.2d at 816 n. 2; *Sears, Roebuck & Co.*, 839 F.2d at 309.

conduct" supports the bankruptcy court's finding of fraudulent intent); *In re Kindorf*, 105 B.R. at 689. Concealment of assets can be grounds for disallowance of exemptions, "to hold otherwise would be to reward debtors who conceal assets from the estate." *In re Magnuson*, 113 B.R. 555, 560 (Bankr.D.N.D.1989).

In determining that Yonikus' failure to report was fraudulent, the bankruptcy court found that Yonikus engaged in "a pattern of fraudulent deception." The bankruptcy court cited Yonikus' employment of separate law firms, Yonikus' "evasive" responses to questions, the court's belief that attorney Smith did not advise Yonikus that the personal injury award was exempt from the bankruptcy estate, and Yonikus' fraudulent conduct as to the attempted transfer of the three parcels of residential real estate to his daughters. Furthermore, at the time that Yonikus filed the bankruptcy petition, Yonikus did not know that the State of Illinois would require that Yonikus' worker's compensation award be offset by the monies he might collect from the personal injury claim. This offset did not happen until after Yonikus received and expended monies acquired from the personal injury award, years after Yonikus filed for bankruptcy.

We find that the bankruptcy court was not clearly erroneous in concluding that Yonikus knowingly and fraudulently failed to report the personal injury proceeds. Despite Yonikus' claim that he received no advantage from failing to report the personal injury claim, Yonikus did receive and spend the unreported $40,391.17 personal injury settlement proceeds before he learned that the State of Illinois would seek return of those proceeds to offset the worker's compensation award. We agree with the bankruptcy court, that "[a] discharge in bankruptcy is a privilege which is only granted the honest debtor [and] Daniel J. Yonikus has proven himself to be a dishonest debtor not entitled to a discharge, and his is therefore revoked."

## III.   CONCLUSION

The bankruptcy court properly found that Yonikus had a duty to report the personal injury claim, and that Yonikus knowingly and fraudulently failed to report that claim. The Bankruptcy Code, at 11 U.S.C. § 727(d)(2) provides that the penalty for such a failure to report is a revocation of the debtor's discharge. Accordingly, we affirm.