# United States Bankruptcy Appellate Panel

**FOR THE EIGHTH CIRCUIT**

No. 97-6018

| | |
|---|---|
| In re: | * |
| | * |
| Kenneth L. Kasden, | * |
| | * |
| Debtor. | * |
| | * |
| | *  Appeal from the United |
| Thomas F. Miller, Trustee | *  States Bankruptcy Court |
| of the Bankruptcy Estate of | *  for the District of |
| Kenneth L. Kasden, | *  Minnesota |
| | * |
| Plaintiff-Appellee, | * |
| v. | * |
| | * |
| Kenneth L. Kasden, | * |
| | * |
| Defendant-Appellant. | * |

Submitted:  May 16, 1997

Filed:  June 20, 1997

Before HILL, KOGER and SCOTT, Bankruptcy Judges

KOGER, Chief Bankruptcy Judge

Kenneth L. Kasden, *pro se*, (hereafter "Debtor") has appealed the order entered by the bankruptcy court for the District of Minnesota, revoking his discharge pursuant to 11 U.S.C. § 727(d)(2)and ordering Debtor to turn over to the estate certain funds Kasden has obtained.[1]  The judgment of the bankruptcy court is affirmed.

---

[1]  The Honorable Robert J. Kressel, United States Bankruptcy Judge, District of Minnesota.

## STANDARD OF REVIEW

In reviewing a judgment following a trial, we review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 561 (8th Cir. 1997). Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr. P. 8013.

## REVOCATION OF DISCHARGE

The purpose of a discharge in bankruptcy is to relieve an honest debtor from his financial burdens and to facilitate the debtor's unencumbered "fresh start." See Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934). In limited circumstances, however, the debtor's discharge may be revoked; but revocation is an extraordinary remedy. See Bowman v. Belt Valley Bank (In re Bowman), 173 B.R. 922, 924 (B.A.P. 9th Cir. 1994). The grounds for revocation of a debtor's discharge are set forth in § 727(d),[2] which provides:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>
> * * *
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed

---

[2] Unless otherwise indicated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 - 1330 (1994).

2

> to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee. . . .

11 U.S.C. § 727(d)(2).

After conducting a trial on the trustee's complaint to revoke the debtor's discharge under § 727(d)(2), the bankruptcy court found the following sequence of events, all performed by the debtor in the few days before and in contemplation of his filing a petition for bankruptcy:

| | |
|---|---|
| July 27, 1994 - | Debtor received a check from Indian River Distribution Company in the amount of $7,500.00. |
| August 1, 1994 - | Debtor cashed the $7,500.00 check from Indian River. |
| August 1, 1994 - | Debtor made a $2,500.00 payment to All American Recreation toward the purchase of a $6,000 hot tub. He had already made a $1,000.00 payment to All American toward the hot tub on July 21. |
| August 1, 1994 - | Debtor paid Knox Lumber $1,384.50 as prepayment for roof trusses which he did not pick up until after he filed bankruptcy. |
| August 2, 1994 - | Debtor paid $2,000.00 cash to Jay Roshay as prepayment for labor to be provided at Debtor's home. |
| August 3, 1994 - | Debtor received another check from Indian River Distribution Company in the amount of $2,700.00 from the sale of a skidloader. That same day, Debtor endorsed that check over to the Fire Place Center as well as paying an additional $853.13 in cash, for a total payment of $3,553.13, as prepayment for fireplace equipment. The check showed a deposit date of August 5, 1994, one day after Debtor filed his bankruptcy petition. |
| August 3, 1994 - | Debtor paid $1,800.00 in cash as an advance |

payment for 600 feet of marble tile which he did not pick until after filing bankruptcy.

August 3, 1994 -    Debtor purchased paint from Knox Lumber for $777.02.

August 4, 1994 -    Debtor filed his petition in bankruptcy.

Neither the payments to the debtor from Indian River nor the payments made by Debtor for the home improvement materials and services were reported on any of Debtor's bankruptcy schedules. In fact, while several other prepetition transfers were disclosed in the schedules, these were not. The debtor openly admits he performed all of these transactions with the intent of preventing his creditors from receiving the proceeds of the checks from Indian River. He maintains he did so on the advice of his attorney and under the belief that he was properly and legally protecting that money from his creditors by investing it into his homestead which he thought would be exempt.

The bankruptcy court concluded that had the trustee found out about these transfers within the applicable limitations period, they would have constituted the making of a false oath and the concealing of transfers, providing grounds for the denial of discharge under §§ 727(a)(4)(A) and 727(a)(2). The court also declared that the assets purchased (the hot tub, the prepaid lumber and tile, etc.) were all assets of the estate which the debtor did not list on his Schedule B, thereby providing further grounds for denial of discharge under §§ 727(a)(2) or 727(a)(4). Additionally, the debtor falsely stated to the court that he was unemployed, that he had no income, and did not reveal the two payments from Indian River, all providing grounds for denial of discharge for making a false oath.

The trustee did not discover these omissions until after the

4

time had passed for objecting to discharge, which under Fed. R. Bankr. P. 4004(a), is not later than 60 days following the first date set for the first meeting of creditors. In fact, the trustee did not discover the omissions until after the debtor received his discharge on January 24, 1995.[3]

After the discharge was entered, and during his investigation, the trustee discovered the sale of the skidloader to Indian River Distribution Company, leading him to make inquiries of Jon Heidinger, a former officer of Indian River Distribution Company who was, at the time of the inquiry, winding up Indian River's affairs. The trustee asked Heidinger to provide him with a copy of the check which reflected the payment by Indian River Distribution Company to Debtor for the purchase of the skidloader. Heidinger, a friend of the debtor, notified the debtor of the trustee's inquiry regarding the check. Debtor met with Heidinger and altered the check to remove the debtor's endorsement of the check to the Fire Place Center as well as the deposit stamp indicating it had been deposited into the Fire Place Center's bank account. Heidinger submitted a copy of the check to the trustee in the altered form. The bankruptcy court found that "[t]he purpose of this alteration was to prevent the [trustee] from discovering the transfer to the Fire Place Center which the [debtor] rightly feared would lead the [trustee] to uncover the series of prepetition transfers."

The trustee, however, was able to obtain another copy of the check from Indian River's bank which contained the endorsement, thus leading the trustee to discover the alteration of the check and the other transfers. According to Heidinger's testimony, when

---

[3]  The trustee filed this adversary complaint to revoke the debtor's discharge pursuant to § 727(d)(2) on June 6, 1996. The case had not yet been closed, so the time requirements of § 727(e)(2)(B) for bringing an action to revoke discharge are met.

Debtor heard that the trustee was inquiring about the check, Debtor became "panicked" or "agitated." Debtor testified he feared that if the trustee saw the endorsement to the Fire Place Center, the trustee would start making inquiries into the other transfers and that would cause new litigation over those transfers. As a result, he testified he altered the check to prevent the trustee from instituting more litigation and incurring more fees for himself.

The trustee not only discovered the series of transfers to the Fire Place Center and other home improvement businesses, but also discovered that on January 26, 1995, and February, 22, 1995, the debtor returned some of the fireplace equipment to the Fire Place Center and obtained refunds in the amounts of $1,402.15 and $660.83, totaling $2,062.98. The debtor also did not report these refunds to the bankruptcy court or the trustee.

The trustee brought an adversary complaint seeking to have the debtor's discharge revoked pursuant to § 727(d)(2) because the debtor acquired property that was property of the estate and knowingly and fraudulently failed to report the acquisition of the property and to deliver or surrender such property to the trustee.

The bankruptcy court entered an order revoking the debtor's discharge, also ordering the debtor to turn over to the trustee $2,062.98 representing the fire equipment refunds.[4] The bankruptcy court ordered the debtor to turn over only those refunds because in another adversary proceeding, the trustee was able to obtain a refund for the hot tub from All American Recreation. Also, the rest of the home improvement items obtained by the debtor as a result of the prepetition transfers went to improve the debtor's home which was found to be non-exempt. In re Kasden, 186 B.R. 667

---

[4] The bankruptcy court also awarded to the trustee the costs of bringing the adversary, $120.00.

6

(D. Minn. 1995), aff'd 84 F.3d 1104 (8th Cir. 1996).  Consequently, the improvements that the debtor made to the home actually went to improve the property of the estate which the trustee subsequently sold.   Thus, the only property of the estate that the debtor still possessed was the $2,062.98 in refunds from the Fire Place Center.

Clearly, both the prepayments on the fireplace equipment and the cash refunds for the equipment were property of the estate under § 541(a).  That section provides a very broad definition of property of the estate, namely all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. Debtor does not dispute his acquisition of the fireplace equipment or the refunds, and he does not dispute his failure to report them.  It follows, then, as the bankruptcy court stated, the only remaining question is whether or not the debtor knowingly and fraudulently failed to report his acquisition of the funds.

Debtor declares that he did not know that the refunds were property of the estate or that he had any obligation to report them to the trustee. Debtor asserts he was acting on the advice of counsel and under a mistaken belief that his prepetition expenditures were legitimate investments in his homestead, but the subsequent events, as the bankruptcy court noted, do not support that contention.  First, none of the transfers were reported on his original schedules or his amended schedules, despite the fact that other prepetition transfers and payments were listed.  Debtor's assertion that he did not think he had to list them in his schedules does not excuse the omission.  To the contrary, "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate."  In re Yonikus, 974 F.2d 901, 904 (7th Cir. 1992); see also Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (holding that where a debtor believes an

7

asset is exemptible, he cannot simply omit it from his schedule; rather, he must list the asset on his schedules and then claim the exemption).

> At 11 U.S.C. § 522, the Bankruptcy Code permits debtors to claim certain property as exempt from the bankruptcy estate. However, Bankruptcy Rule 4003 and § 522(*l*) of the Bankruptcy Code dictates that debtors who claim exemptions must list such exempt property on the required schedule of assets. All property the debtor owns at the time the bankruptcy petition is filed becomes property of the bankruptcy estate. Rather than withholding property from the estate, the debtor actually seeks a return of the property from the estate by filing the claim for exemption. The bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate.

In re Yonikus, 974 F.2d at 905 (citations and footnote omitted).

Moreover, and very significantly, immediately upon learning that the trustee was investigating the skidloader check, the debtor intentionally set out to delete the endorsement which would lead the trustee to discover the other transactions, particularly the dealings with the Fire Place Center and the refunds he had received. The trial court properly found this to be very strong evidence that the debtor purposely failed to report the refunds and then took deliberate steps to prevent the trustee from discovering them. Debtor's explanation for altering the check did not convince the bankruptcy court.

Debtor testified at trial that he believed the trustee wanted to see the check for the sole purpose of establishing ownership of the skidloader. Although not discussed by the partes or the bankruptcy court, this statement by the debtor to be revealing because it was the discovery of the skidloader in Debtor's garage after discharge that led the trustee to inquire of Jon Heidinger about it. Debtor was still in possession of a skidloader he allegedly sold many months prior. That he thought the trustee only

8

wanted to establish ownership of it does not make sense and raises even more questions as to the debtor's course of conduct.

Finally, Debtor offered in his own defense evidence that he took the proceeds of the first refund, the check for $1,402.15, and converted the funds into a cashier's check which he simply retained in his possession in that form for some five months without using the funds. He offered this to show that he ultimately used the money represented by that cashier's check for other improvements to his home that all along he thought represented legitimate investments in his homestead. The bankruptcy court concluded that this scenario proved more than disproved his fraudulent intent because rather than depositing the money with the trustee or into an identifiable account, he secretly converted the money into a form unlikely to be discovered and then held onto it for five months without informing anyone he had it. This admission by the debtor provides further support for the bankruptcy court's conclusion that he knew the funds should have gone to the estate and that he intentionally prevented the trustee from finding out about them.[5]

Debtor's fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct. See In re Yonikus, 974 F.2d at 905; In re Walters, 176 B.R. 835, 876 (Bankr. N.D. Ind. 1994). A debtor's fraudulent intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent. See In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987); Walters, 176 B.R. at 876. The focus is on whether the debtor's actions "appear

---

[5] Debtor held onto the cashier's check until July 14, 1995, and thereafter allegedly used the money to improve his homestead. On July 19, 1995, however, the District Court of Minnesota held that the Debtor's homestead was not exempt.

so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor." Van Horne, 823 F.2d at 1287 (quoting In re Hunt, 30 B.R. 425, 441 (M.D. Tenn. 1983)). The trustee may also prove the debtor's fraudulent intent by showing that the debtor acted so recklessly that fraud can be implied. See Owens v. United States, 98 F.Supp. 621, 627 (W.D. Ark. 1951), aff'd, 197 F.2d 450 (8th Cir. 1952); see also Walters, 176 B.R. at 876.

Debtor argues that the bankruptcy court's determination as to his intent is error because "Judge Kressel had not walked in the [debtor's] shoes for the last five years, and has absolutely no idea whatsoever what the state of mind was of the [debtor] during that period of time." This is the very reason, absent an admission of intent to defraud, that the trial court must look at the circumstantial evidence and the events that occurred to try to determine intent from that evidence. See Van Horne, 823 F.2d at 1287; Owens, 98 F.Supp. at 627.

The bankruptcy court properly applied this principle and we can find no error in the bankruptcy court's credibility determination and factual findings and the conclusion that the debtor knowingly and fraudulently failed to report and turn over property that belonged to the estate.

ORDER TO TURN OVER THE REFUNDS

Having found that the debtor was in possession of property of the estate, it was proper for the bankruptcy court to order the debtor to turn over those funds to the estate under § 542(a), which enables a trustee to recover the value of property of the estate from any party holding that property during the pendency of the

10

case.[6]

DUE PROCESS

Debtor also argues he is entitled to a new trial because he was denied due process.  He points to several rulings and occurrences during the trial which he asserts were either error or claims the bankruptcy court should have given him special consideration because he appeared at the trial, *pro se*.[7]

First, Debtor contends the bankruptcy court erred in refusing to admit a particular letter he sought to introduce. The transcript reveals that while Kasden was testifying on his own behalf (in "direct examination" of himself), he sought to introduce a letter written by his former attorney to the trustee's attorney.  The attorney represented Debtor in this bankruptcy case and adversary until a couple of months before trial. Debtor contends the letter supported his belief that the property was exempt.  The trustee's attorney objected not only on hearsay grounds, but also because a paragraph of the letter had been redacted.  The bankruptcy court sustained both objections.

On appeal, Debtor argues:

Judge Kressel should have informed the [debtor] that just by stating the letter is a true and exact copy with the

---

[6]  It was not necessary for the Court to order the debtor to turn over any of the other items because they were incorporated into the house and, after Debtor lost his homestead exemption, the trustee sold the house with the improvements.  Consequently, the estate benefitted from those items.

[7]  Some of these points are raised in the portion of Debtor's brief regarding the revocation of discharge argument rather than the due process portion of the brief.  Nevertheless, the Court addresses all of the trial error arguments here.

11

exception of paragraph 1, that letter would have been entered into evidence. The [debtor] believes it was the obligation of the Honorable Judge Kressel to assist him in his pro se representation in order the find the truth and justice served.

By definition, a document is not a true and accurate copy if it has been altered. The bankruptcy court correctly found the letter to be hearsay and Debtor offers no exception to the hearsay rule which would make it admissible, even if it had been introduced in proper form. <u>See</u> Fed. R. Evid. 801 and 802.

Next, Debtor argues that the bankruptcy court erred in quashing a subpoena Debtor served on the trustee's attorney. The court quashed the subpoena because it had not been signed by an attorney or officer of the court as required by the rules. Debtor contends he was given incorrect information by bankruptcy court personnel and that, in any event, the trustee's attorney should have been required to testify regardless of the subpoena because he was in court to represent the trustee and he was listed on the debtor's witness list. The debtor, however, never called him to testify at trial. So, even assuming he could have testified, the bankruptcy court merely quashed an improper subpoena; it did not refuse to allow the debtor to call him as a witness. The bankruptcy court's ruling to quash the subpoena was not error. Since the court never had a chance to rule on whether the trustee's attorney could testify, there can be no error. Furthermore, Debtor offers no indication what this witness would have testified about or how the testimony may have "vindicated" him as he contends.

Debtor also points to another portion of his own direct testimony where he asked the bankruptcy court for permission to leave the witness stand to retrieve a document from the counsel table where he had been sitting. The bankruptcy court asked his purpose and the debtor replied, "for my notes." The court told the

12

debtor, "Well, you can't read from your notes. You have to testify from your memory." Debtor without objection then continued with his testimony without his notes. He now complains that he could not adequately remember everything and thus could not conduct his complete defense, was intimidated, and interpreted the court's statement to mean that he could not use notes at all. The transcript reveals otherwise. The fact that Debtor misinterpreted the bankruptcy court's seemingly clear statement does not constitute error. Second, Debtor does not now offer any indication as to what he would have testified to had he had his notes and whether or how it would have changed the outcome.

Finally, Debtor asserts the bankruptcy court erred in refusing to admit, on relevancy grounds, certain receipts Debtor sought to introduce. The receipts were for additional home improvement items which the debtor purchased post-petition. Debtor sought to introduce these receipts, totaling some $4,500.00, to show that he used the fireplace refunds to improve his homestead. This, he contends, would have demonstrated that he did not intend to defraud his creditors but rather that he honestly believed the money belonged to him as part of his homestead.

The bankruptcy court correctly concluded that the receipts were not relevant. If the receipts show that the debtor invested an additional $4,500.00 into his homestead post-petition, it would make no difference.

## CONCLUSION

The bankruptcy court properly found that Debtor had a duty to report the transactions related to the home improvements and particularly the refunds on the fireplace equipment, and that Debtor knowingly and fraudulently failed to report his acquisition of those funds. Accordingly, the bankruptcy court did not err in

13

revoking the debtor's discharge pursuant to 11 U.S.C. § 727(d)(2). Because the refunds were property of the estate, it was proper for the bankruptcy court to order the debtor to turn those funds over to the trustee pursuant to 11 U.S.C. § 542. Accordingly, we affirm.

A true copy.

Attest:

      CLERK, U.S. BANKRUPTCY APPELLATE PANEL
      FOR THE EIGHTH CIRCUIT