**In the Matter of Ronald Leon HENSLEY, Debtor.**

**Smithbuilt Financial, LLC, Plaintiff,**

**v.**

**Ronald Leon Hensley, Defendant.**

**Bankruptcy No. 04–31912 HCD.**

**Adversary No. 05–3021.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Sept. 28, 2007.

William G. Lavery, Esq., Whisler & Lavery, Elkhart, IN, for plaintiff.

Mark E. Wagner, Esq., Kizer & Neu, Bremen, IN, for defendant.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Chief Judge.

At South Bend, Indiana, on September 28, 2007.

Before the court is the Complaint to Determine Dischargeability of Debt and Objection to Debtor's Discharge filed by Smithbuilt Financial, LLC, plaintiff in this adversary proceeding, against defendant Ronald Leon Hensley, chapter 7 debtor. In the Complaint, the plaintiff seeks denial of the debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4), (5) and (7). It also asks that the debt owed to it by the debtor be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The court held a trial on the issues on April 26, 2007. After the parties filed post-trial briefs, the court took the matter under advisement. For the reasons discussed below, the court denies the debtor's discharge pursuant to §§ 727(a)(3) and (a)(4)(A).

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200. 1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(I) and (J) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

### Background

The defendant Ronald Leon Hensley was the sole shareholder, officer, and director of Midwest Cable Services, Inc. ("MCS"), an Indiana corporation engaged in the business of supplying goods and services to the cable industry. The business was operated by the defendant, his wife, and his four children. Hensley filed a voluntary chapter 7 petition in bankruptcy on April 7, 2004.[1]

The debt at issue arises out of two promissory notes. MCS and KeyBank National Association executed one note for $150,000 on May 5, 2000, and another note for $313,000 on May 31, 2000. Hensley personally guaranteed the MCS indebtedness pursuant to unlimited commercial guaranty agreements signed at the same time the promissory notes were signed. The loan documents were assigned to the plaintiff, Smithbuilt Financial. At the time the debtor's petition was filed, the balance of the indebtedness was about $462,544. See Pl.Ex. 3, Proof of Claim. The unpaid balance now is $312,544. The debt is secured by all of MCS's assets—its accounts, accounts receivable, inventory, general intangibles, machinery, equipment, vehicles, and the products and proceeds thereof.

MCS ceased its business operations in July 2003. Sometime in 2003 the Hensley children formed a business entity known as Midwest Cable Electronics, LLC ("MCE"). That new entity acquired some of the business assets of MCS and all of its customers. MCE engaged in exactly the same business as did MCS. It used the same telephone number, and the employees answered the telephone "MidWest," which neatly covered both the old company MCS and the new one MCE, according to the plaintiff. Hensley responded that he

---

1. Hensley's business, MCS, filed a chapter 7 petition on April 7, 2004, as well.

did not think the phone greeting was intended to mislead customers concerning which company they were contacting. He explained that his children operate the business and that he and his wife are merely employees of the business. The debtor admitted that he received paychecks from MCS and MCE in 2003 and that all of the assets MCE acquired from MCS constituted a portion of the indebtedness of MCS to the plaintiff.

At trial, the debtor reviewed MCS's balance sheets listing the assets of the business. *See* Pl. Exs. 14, 15, 16. Hensley testified that the secretary of MCS prepared the information. The December 31, 2003 Balance Sheet stated that, on that date, MCS owned $307,493.25 in machinery and equipment, $137,928.30 in office equipment, $494,226.98 in vehicles, and $37,697.50 in other assets. However, when he filed bankruptcy on April 7, 2004, he reported on his schedules no machinery and equipment, no office equipment, and only $49,500 in vehicles. Plaintiff's counsel noted that $800,000 in assets were disposed of in the three-month period between December 31, 2003, and the bankruptcy filing. He then reviewed the MCS depreciation schedule and the company's "Explanation of Machinery, Equipment and Vehicles" which Hensley said were summary explanations of what happened to some of the MCS assets. *See* Pl. Exs. 17, 18. The debtor testified from the documents that many items (power washer, forklifts, scales, cranes, baler, lawn mowers, etc.) were scrapped as worthless or worn out. He admitted that he did not give the equipment back to KeyBank and could not account for any payments he might have gotten for the items as scrap. With respect to the items sold (cranes, other forklifts, trencher, scraper, backhoes, Cub Cadet, snow blade, other machinery), he admitted that he knew that KeyBank had a security interest in all the equipment but sold it anyway, without the bank's permission. He testified that he did not know that he had to report all the items when he sold them. Hensley reviewed the list of vehicles and office equipment scrapped or sold, as well. He believed that he might have put the money from the sale of the equipment and inventory in his checking account in order to pay down his mortgage.

The debtor testified that, in 2001, he made a loan to Buckeye Aviation, a parachute manufacturing company owned by his nephew. By July 1, 2003, the loan had increased to $547,000; he said he never recovered a penny on that loan. Hensley explained that the $313,000 loan from Key-Bank went to Buckeye, and the rest of the loan came from MCS. Hensley acknowledged another loan listed on the December 31, 2003 balance sheet, in the amount of $104,566.64, but he did not recall when that loan was made or to whom. He also testified that he borrowed $247,000 from a man named Peter Chen and used the money to buy 20 acres of real estate in Argos, Indiana, and then transferred the property to his two sons-in-law. He paid Peter Chen back with MCS receivables, and admitted that KeyBank had a security interest in those receivables. After discussion about the value of that land, however, he stated that he gave it to his sons-in-law in return for their unpaid work at MCS.

Hensley stated that he has been the president and 100% shareholder of Argos Development since its inception and owned Phoenix Power Parachutes until its assets were sold. He stated he owned 50% of the stock in a company called Argos Commercial Properties, which owned real estate. His ownership interest ended in 2002, he thought, within six years of filing bankruptcy. He did not recall whether he was an officer. He also was associated with Rochester Fabrication within six years of

filing. Rochester was not mentioned in his bankruptcy filings, and none of the corporations was reported on his Statement of Financial Affairs, he admitted. However, he did list Argos and Phoenix corporations on Schedule B, his attorney reminded him.

Hensley testified that he had transferred his main residence to his daughter Laura in July 2003 and that he closed a bank account at Teachers Credit Union within a year of filing bankruptcy. He sold some of the furniture from the residence and gave some of it to his daughters; he then bought a travel trailer to live in until he and his wife found a new house.

Hensley stated that the bankruptcy trustee sold some of the personal and MCS property by auction, and the trustee knew that the debtor was cooperative. The debtor admitted, both at trial and in his post-trial brief, that he sold much of the MCS inventory and equipment knowing that it was the plaintiff's collateral but without notifying the plaintiff. He stated in his post-trial brief that "[t]his may have been negligent or even reckless on his part for failing to read his loan documents but there was no proof given that what Mr. Hensley did was intended actually to harm KeyBank." R. 56 at 9.

### Discussion

■ The court begins with the plaintiff's request for denial of the debtor's discharge in his chapter 7 bankruptcy. Section 727 of the Bankruptcy Code requires a bankruptcy court to grant a discharge to a chapter 7 debtor unless one of the ten exceptions listed in § 727 is proven. Consistent with the Code's "fresh start" policy, courts have required that "exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996). Nevertheless, courts also have recognized that a debtor's discharge "is not a right,

but a privilege." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir.2002). "Thus, consistent with the Code, bankruptcy protection and discharge may be denied to a debtor who was less than honest." *Village of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002).

■ The plaintiff seeks denial of discharge under several subsections of § 727(a). The court begins with the allegation that the debtor knowingly and fraudulently made a false oath on his bankruptcy schedules, in violation of § 727(a)(4)(A). The plaintiff has the burden of proving that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement related to the bankruptcy case in a material way." *Buckeye Retirement Props. v. Tauber (In re Tauber)*, 349 B.R. 540, 558 (Bankr.N.D.Ind.2006) (citations omitted). Once the burden shifts to the debtor, he then must offer credible evidence to explain his statements. *See id.*

■ At trial, the plaintiff examined the debtor in detail concerning his entries on his Statement of Financial Affairs ("Statement"). The debtor stated that he was aware of the declaration when he signed the statement, and he was confident that he put down everything correctly. Under Item 18, the "nature, location and name of business," he wrote "none." The plaintiff read the explanation that he, as an individual debtor, was told to disclose all businesses in which he was an officer of a corporation within the last six years. The debtor then admitted that he was the 100% shareholder and president of Argos Development and failed to list it. He also admitted that he owned Phoenix Power Parachutes, Argos Commercial Properties, and

Rochester Fabrication within six years of filing bankruptcy, but failed to disclose them. He could not remember whether he was an officer of those companies.

The debtor testified that he transferred his residence to his daughter Laura in July 2003. He agreed that it was valued at $100,000, but that he sold it for $70,000, because of water damage to it. When asked whether he pocketed about $20,000 from the transaction, he said he did not think so. He thought at first the money went to pay off the mortgage. However, he then remembered that he and his wife used the money to buy a camper to live in until they could find another home. He admitted that he did not disclose in his bankruptcy schedules the sale of his residence. Nor did he list that residence under "prior addresses" (Item 15 of the Statement), even though he and his wife had lived at that residence within two years of filing bankruptcy. Finally, the debtor testified that he had held a personal checking account at Teachers Credit Union, probably jointly with his wife, and that they closed it within a year of filing the bankruptcy. He admitted that he did not list it under Item 11 of the Statement.

■ It is clear that bankruptcy schedules and statements of financial affairs are statements under oath. *See Green Bay Packaging, Inc. v. Oscarson (In re Oscarson)*, 363 B.R. 542, 555–56 (Bankr.N.D.Ill. 2007). The debtor admitted that he failed to disclose numerous pieces of information on the Statement of Financial Affairs. The court finds that the Statement is false and that the omissions, which created the false impression that the debtor had no businesses, no prior closed bank accounts, and only one prior address, were material to the Statement. *See In re Tauber*, 349

B.R. at 561. Whether the debtor knew the information provided in the Statement was false or whether he omitted some information with the intent to deceive, are questions of fact.

Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression. [The debtor] concedes as he must that not caring whether some representation is true or false—the state of mind known as "reckless disregard"—is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material.

*In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (citing *In re Yonikus*, 974 F.2d 901, 905 (7th Cir.1992)).

■ At trial, the debtor admitted that he failed to include information in his Statement. He knew he had signed it under penalty of perjury, as well. He never attempted to amend it and did not provide reasonable or plausible explanations for omitting so much pertinent information from the Statement of Financial Affairs. The debtor's attorney pointed out, at trial, that the debtor's ownership interest in the other corporations was listed on Schedule B. In the view of the court, the debtor's recognition of his interest in the other corporations gave him even more of a reason to incorporate that information into his Statement of Financial Affairs. In his post-trial brief, the debtor suggested that the omissions were "inadvertent" and that his listing of one prior address, rather than two, was a "good faith effort to answer this question properly."[2] R. 56 at 4.

---

**2.** The debtor himself presented no explanations at trial for his undisclosed information in the Statement of Financial Affairs. In the post-trial brief, he offered belated explanations: (1) He did not list his former residence, for example, because he owned it with his

A debtor has an absolute duty to disclose his financial affairs completely. *See In re Yonikus,* 974 F.2d at 904. He does not get partial credit for giving only some of the information. This debtor is a mature and experienced businessman; his failures to disclose his positions in other corporations and his lack of explanation for the many omissions are simply not credible to the court. *See In re Chavin,* 150 F.3d at 729 (concluding that a reasonable person could not believe the debtor's stated reason for his false representations or omissions). After observing the witness throughout his testimony, the court finds that the false Statement of Financial Affairs did not result from the debtor's mere sloppiness. Whether the debtor simply did not care that the Statement was accurate and thorough or whether he intended to misrepresent his financial affairs, the court finds that the debtor's discharge must be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

The court notes, as well, that the defendant's post-trial brief is filled with admissions that the debtor "did not keep the best of business records." *See* R. 56 at 2. The debtor had testified at the trial that MCS's balance sheets and the depreciation schedule were incorrect and unreliable. He blamed the errors, however, on MCS's employees (who also are his wife and children). In addition, he admitted that the financial statement he gave to KeyBank (Pl.Ex.20) was incorrect, but blamed "the KeyBank loan officer [who] encouraged him to 'inflate' the values listed on this financial statement." *Id.* at 6. The debtor also blamed KeyBank for not supervising his business:

> KeyBank did not even send a loan officer to the location of Midwest Cable or apparently require monthly reports or annual financial statements from the business. While Mr. Hensley and his family kept records of the business as they could, KeyBank did not request information about the business and seemingly did not care how it was operated so long as the payments were made.

*Id.* at 10. Although the debtor admitted that the plaintiff "did prove that Mr. Hensley's record keeping was deficient," *id.* at 3, he insisted that it did not prove that the debtor's conduct was intentional or malicious.[3]

■ Section 727(a)(3) denies a discharge to a debtor when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information … from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). It "'ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.'" *Peterson v. Scott (In re Scott),* 172 F.3d 959, 969 (7th Cir.1999) (quoting *In re Juzwiak,* 89 F.3d at 427–28).

---

wife (who was not a debtor) and because it was sold before the bankruptcy was filed. (2) His failure to disclose his officer/director status in the other corporations was not an intent to defraud. (3) He did not disclose the conveyance of real estate to his sons-in-law because it was compensation for their employment. *See* R. 56 at 11–12. These belated attempts to excuse his lack of full disclosure are unpersuasive. The information was required on the Statement of Financial Affairs.

3. The debtor also claimed, in his post-trial brief, that his bankruptcy schedules were prepared correctly. *See* R. 56 at 7. The court found *supra,* however, that the Statement of Financial Affairs was a materially false statement which did not disclose accurate information despite the fact that the debtor executed it under oath and subject to the penalty of perjury.

The court finds that the records presented by Hensley to demonstrate the financial condition of the debtor's business and personal finances failed to give sufficient information "from which the debtor's financial condition or business transactions might be ascertained." § 727(a)(3). The debtor admitted that his past records were inaccurate and incorrect. His explanations were unsatisfactory to the court. When considering subsection (a)(3), courts apply a more stringent record-keeping standards to a debtor who is a businessman rather than an unsophisticated wage earner. *See Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir.2002). Importantly, no showing of fraudulent intent is necessary under this subsection. *See id.* at 901. The court finds that the plaintiff demonstrated that the debtor failed to maintain adequate records from which his financial condition could be ascertained. The burden then shifted to the debtor, who was unable to justify the lack of adequate record keeping or to explain satisfactorily, from the business records available, the disposal of substantial assets in the three months prior to his filing his chapter 7 petition. The court concludes that the debtor has violated § 727(a)(3) of the Bankruptcy Code.

The plaintiff raised alternate grounds for denying the debtor's discharge or for excepting its debt from his discharge, but the court finds that two grounds are sufficient in this case. The plaintiff's Complaint is granted and the debtor's discharge is denied under §§ 727(a)(3) and 727(a)(4)(A).

### CONCLUSION

For the reasons set forth in this Memorandum of Decision, the court grants the Complaint to Determine Dischargeability of Debt and Objection to Debtor's Discharge, filed by the plaintiff Smithbuilt Financial, LLC. The discharge of debtor Ronald Leon Hensley is denied pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A).

SO ORDERED.